[S. F. No. 8654. In Bank.—June 16, 1919.]

In the Matter of the Estate of THOMAS W. MOORE, Deceased. CHARLES MOORE et al., Respondents, v. HUGH K. McKEVITT, Appellant.

[1] ESTATES OF DECEASED PERSONS—PROBATED WILL—OFFER OF ANOTHER WILL NOT A CONTEST.—While section 1333 of the Code of Civil Procedure relates to the conclusiveness of the unopposed probate of a will against a *contest*, the offer of another will is *not* a contest of the one admitted to probate.

[2] ID.—POWERS AND LIMITATIONS OF PROBATE COURTS—SPECIAL STATUTES.—The probate of wills is purely a creature of statute, and the statutes pertaining to estates of deceased persons must be looked to rather than those of general application for the powers and limitations of the probate courts.

[3] ID.—PROBATE OF WILL—EXPIRATION OF YEAR WITHOUT CONTEST—RIGHT TO PROBATE SUBSEQUENT WILL.—Section 1327 of the Code of Civil Procedure, providing that the probate of a will may be contested within one year after its probate, and section 1333, making the probate conclusive unless there has been a contest filed within one year, do not prevent the offering more than one year after such probate of another document as a genuine and subsequent will, such offer not being a contest of the will admitted to probate.

[4] ID.—WILL CONTEST—MENTAL INCAPACITY—EVIDENCE—TESTIMONY OF ATTORNEY.—In a will contest on the ground of mental incapacity, it was error to refuse to permit an attorney, who for many years had represented the testator and who was called as a witness and testified that in his opinion the testator was of sound and disposing mind during the entire period of their acquaintance, to state what the testator testified to while on the witness-stand in a certain action, from a document in the form of a bill of exceptions prepared by such attorney while its contents were fresh in his memory, using the court reporter's notes to check it, and containing the testator's testimony.

[5] ID.—TESTIMONY FROM WRITING—SECTION 2047, CODE OF CIVIL PROCEDURE.—The part of section 2047 of the Code of Civil Procedure which provides that a witness *may* testify from a writing, though he retain no recollection of the particular facts, is mandatory.

[6] ID.—SUPPRESSION OF EVIDENCE — PRESUMPTION — ERRONEOUS INSTRUCTION.—In a contest of a will, the giving of the instruction with respect to the presumption of law that evidence willfully suppressed would be adverse if produced, was error where the record fails to disclose any instance of suppression of evidence or anything that could be properly construed as such withholding of facts

in defendant's possession, and such error was prejudicial where one of the counsel for plaintiffs in his argument sought to apply the rule embodied in the instruction to the circumstance that no person named in the will had been called as a witness.

[7] ID.—FAILURE TO CALL LEGATEES—EVIDENCE NOT SUPPRESSED.—In a will contest the failure to call as witnesses those named as legatees in the will is not suppression of evidence.

APPEAL from a judgment of the Superior Court of Santa Cruz County. Edgar T. Zook, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Marcel E. Cerf, C. H. Sooy, A. B. Weiler and Netherton, Johnston & Snyder for Appellant.

Charles M. Cassin, James L. Atteridge, J. Early Craig, Rea, Cassin & Caldwell and John H. Leonard for Respondents.

MELVIN, J.—This appeal is taken from a judgment pronounced after verdict of a jury declaring that Thomas W. Moore was not of sound and disposing mind on November 21, 1908, at the time of executing a purported will.

Mr. Moore died on May 12, 1914. A purported will dated January 13, 1896, was admitted to probate on June 19, 1914. In accordance with the terms of this writing respondents, Charles Moore, William A. Moore, and Stella Moore Tolle, nephews and niece of the deceased, were appointed respectively administrators and administratrix of the estate.

In October, 1916, a purported will bearing date of November 21, 1908, was offered for probate, with a petition asking not only for its admission but praying that the letters previously issued be revoked and that those persons who had been administering the estate be required to account to an administrator to be appointed under the later will. Respondents filed written opposition to the later will, based upon the alleged unsoundness of the testator's mind at the time of the execution thereof. They were successful in their contest.

Respondents deny the jurisdiction of the superior court to entertain the appellant's petition, upon the ground that under sections 1333 and 1327 of the Code of Civil Procedure, no contest of a will may be effectually maintained. Section 1327 provides that the probate of a will may be contested within

one year after such probate. Section 1333 makes the probate conclusive (except as to those under certain disabilities) unless there has been a contest filed within one year. If, as respondents contend, the offer of another document as a genuine last will, more than a year following the probate of a writing having the characteristics of a testament is a *contest* of the probate, these sections would seem to be conclusive. Respondents cite and quote at length from the opinion in *Estate of Adsit,* reported in Myrick's Probate Decisions, at page 266, in which that learned jurist adopted the view expressed by Page, in his work on Wills (section 322), that the profert of a will discovered after an earlier will has been admitted to probate necessarily involves a contest of the probated will and must be made within the time limited for contest. Respondents also cite with apparent confidence the *Estate of Marx,* 174 Cal. 762, 767, [L. R. A. 1917F, 234, 164 Pac. 640]. In that case Mr. Justice Shaw, who prepared the opinion, was discussing the effect of the subsequent offer of an *earlier* will after one of later date, not disposing of the entire estate, had been probated, and it was held that where the two writings could be so construed together as to constitute the last will of the testator, it was the court's duty to give them such effect. In the course of the discussion in the opinion, the following language was used: "After a will has been probated and another paper of an earlier date is found which constitutes a part of the last will of the decedent together with that already probated, it is not necessary to revoke the former order of probate. A different question would be presented if the earlier will had been the one first discovered and probated. In that case, the later will, if admitted to probate, would partially supersede and revoke the prior will if inconsistent in part only, or wholly revoke it if entirely inconsistent. Within the year from the first probate, the later will could be offered for probate in connection with a petition to revoke the probate of the earlier one, if it was inconsistent therewith, on the ground that the later will substantially affected the validity of the will probated as provided in subdivision 4 of section 1312 of the Code of Civil Procedure. (Code Civ. Proc., secs. 1327, 1328, 1329, 1330.) After that period perhaps the probate of the earlier will would be conclusive so far as it disposed of the estate. (Code Civ. Proc., sec. 1333; *State* v. *McGlynn,* 20 Cal. 233, [81 Am. Dec.

118].)  The present petition was filed within the year and therefore the precise question last mentioned does not arise.'' Counsel for respondents insist that this is a decision upon the question presented in the case now under consideration.  We do not agree with this contention.  The court was not there seeking to define the rights of one offering a subsequent will which would by its terms utterly supersede one of earlier date previously probated.  Some of the possible objections to such an offer were suggested for the purpose of illustrating the fact that the wills of Marx and the order and date of their presentation involved quite a different problem.

Appellant's contention is that while section 1333 of the Code of Civil Procedure relates to the conclusiveness of the unopposed probate of a will against a *contest*, the offer of another will is *not* a contest of the one admitted to probate. [1]  This position is well taken.  [2]  There can be no question that the probate of wills is purely a creature of statute, and that we must look to the statutes pertaining to estates of deceased persons rather than to those of general application, if we seek to define the powers and limitations of the probate courts.  For example, this court has recently held that the general statute of limitations does not apply to a proceeding to probate a will.  (*Estate of Hume*, 179 Cal. 338, [176 Pac. 681].)  In the opinion in that case attention is called to the fact that section 1299 of the Code of Civil Procedure contains the declaration that any person interested in the estate ''may, *at any time* after the death of the testator, petition the court having jurisdiction to have the will proved.''  This implies that there is no arbitrary time limit, and the provisions for contesting the validity of a will containing nothing in the nature of a statute of limitations, it follows that no such ground may be urged on demurrer to a petition for probate of a will.  Such, in brief, are the reasons for the decision in the Hume case.  Upon like reasoning, it may be said that presentation of a later will for probate is not enumerated as one of the grounds of contest to a will of earlier date previously offered, and that, therefore, the conclusiveness of probate arising by reason of section 1333 of the Code of Civil Procedure is only potent against a contest of the will which has not been attacked within the statutory period therein prescribed, but not against the offer of another and a later will. It is true that a will may be contested upon any questions

"substantially affecting the validity of the will" (Code Civ. Proc., sec. 1312), and respondents assert that the production of a testament of later date than the one previously offered for probate raises just such a question. There might be some force in this assertion were it not for the fact that the legislature has elsewhere specifically provided for the procedure to be followed when a later will is offered for probate in place of one already proven in due form. Section 1423 of the Code of Civil Procedure, so far as material here, is as follows: "Upon the admission to probate of a later will than the one before admitted to probate, the pre-existing grant of letters testamentary or of administration must be revoked." It will be apparent from an examination of the statutes and authorities relating to the results, respectively, of a successful *contest* and the admission of a posterior will to probate that the latter was not regarded by the legislature or the courts as equivalent to the former. Upon the successful revocation of a will the powers of the executor cease *ipso facto*. (Code Civ. Proc., sec. 1331; *Estate of Crozier,* 65 Cal. 332, [4 Pac. 109]; *In re Freud,* 73 Cal. 555, [15 Pac. 135].) But upon the admission to probate of a posterior will the pre-existing grant of letters testamentary *must be revoked.* (Code Civ. Proc., sec. 1423.) The necessity for specific revocation of prior letters upon the probate of a subsequent will differentiates that procedure from a will contest. Moreover, section 1423 of the Code of Civil Procedure is not found in the chapter of the code relating to contests. It is clear that the legislative intention was to keep distinct and separate the practice respecting contests from that to be followed in petitioning for probate of a will and after probate of an earlier writing. As was well said by the supreme court of Tennessee in the opinion in *Murrell* v. *Rich,* 131 Tenn. 378, 404, [175 S. W. 420, 427]: "The latter proceeding does not in any respect question the correctness of the judgment rendered by the probate court in the former proceeding. The paper here involved does not speak as the will until established by the judgment upon the issue *devisavit vel non;* nor does that judgment assail, collaterally or otherwise, the correctness of the proceeding or the judgment for the probate of the Clarendon will. The judgment probating the will here involved on the issue *devisavit vel non* in the circuit court, if that judgment shall be affirmed, may, in connection with the revocatory

clause of the will, render null the Clarendon will. But this
result does not flow from any collateral attack made either
upon the proceedings or judgment which established the
Clarendon will. It flows from the law which gives vitality
and force to the last testamentary act of the testator.''

It has been held that petitioning for probate of a will later
in date than one containing a proviso which cuts off with a
small legacy all who may contest it, does not bring the pro-
ponent of the later will within the terms of the proviso.
(*Estate of Bergland,* 177 Cal. 227, [170 Pac. 400].) And in
*Estate of Walker,* 160 Cal. 547, [36 L. R. A. (N. S.) 89, 117
Pac. 510], it was determined that a decree of distribution in
a supposed intestate's estate, although it had become final,
did not prevent the probating of a subsequently discovered
will. **[3]** Upon the principles announced in the opinions in
those cases and in the authorities therein cited, we must hold
that the offer for probate of the second will in this proceed-
ing was not a contest and that, therefore, the superior court
had jurisdiction of the matter.

This we believe to be in accord with the weight of authority
in other jurisdictions. The general rule seems to be that
courts of probate have inherent power to set aside their own
orders admitting wills to probate upon the discovery of later
and inconsistent wills. In *Waters* v. *Stickney,* 94 Mass. 1,
[90 Am. Dec. 122], the action of the probate court was ap-
proved in a proceeding in which, after admitting a will to
probate and after the time for appealing from the decree had
passed, the court admitted a codicil to the same will, written
upon the back of the leaf upon which the will was inscribed,
such codicil having escaped attention at the time of the pro-
bate of the original will. In the opinion of the court, written
by Mr. Justice Gray, the following language appears:

''By the practice of the English ecclesiastical courts, a will
may be proved either in common form, *ex parte,* upon being
presented by the executor; or in solemn form, after notice
to all parties interested—which last accords with our practice
in all cases of probate of wills. When a will is proved in
common form, the court may, upon the subsequent application
of any party interested and notice to the executor, at any time
within thirty years, order that will, or a later one, if produced,
to be proved in solemn form. (1 Williams on Executors, 5th
Am. ed., 282, 300, 508; *Case of Executors,* Hetley, 77; *Ridg-*

*way* v. *Abington,* 3 Swab. & T. 3.) And probate of a will, granted upon the mistaken supposition that the testator is dead, may be revoked and canceled by the court which granted it. (*Goods of Napier,* 1 Phill. 83.)

"Even when a will is proved in solemn form, it is within the jurisdiction of the court, for sufficient cause shown, to revoke the probate. The English authorities recognize, as sufficient causes of revocation, forgery of the will, fraud in obtaining probate, neglect or mismanagement in conducting the suit, or the production of a later will."

In New York it was provided by an early statute (2 Rev. Stats. 1829, p. 61, sec. 29) that "The probate of any will of personal property, taken by a surrogate having jurisdiction, shall be conclusive evidence of the validity of such will, until such probate be reversed on appeal, or revoked by the surrogate, as herein directed, or the will be declared void by a competent tribunal." The following section (30) contained the provision that "Notwithstanding a will of personal property may have been admitted to probate, any of the next of kin to the testator, may, at any time within one year after such probate, contest the same, or the validity of such will, in the manner herein provided." And section 31 is as follows: "For that purpose, such relative shall file in the office of the surrogate by whom the will was proved, his allegations in writing, against the validity of such will, or against the competency of the proof thereof." These sections are followed by those outlining the procedure in the contest of a will. In *Campbell* v. *Logan,* 2 Bradf. Sur. (N. Y.) 90, the surrogate, in a learned opinion, held that although a will has been admitted to probate a legatee under a later will may propound it for probate and is not concluded by the probate of the other will. In the course of the opinion the following language appears—language which is very persuasive in view of the fact that the sections reviewed are the very ones from which the corresponding parts of our Probate Act of 1851 were copied and now embodied in our code. (Hittell's General Laws of California, page 820 [2d ed. corrected, published in 1870]) : "The statute has provided the means of enabling the next of kin of a testator, within a year after the probate, on filing allegations against the validity of the will or the competency of its proof, to compel the executors to prove the will anew; and, after hearing the proofs, if the surrogate decide the will to be in-

valid, or not sufficiently proved, he may annul and revoke the probate thereof. But no provision has been made for revoking the probate, where another and later will is subsequently discovered. And yet such a case may often occur after proof of a previous will, and the parties in interest under the last will be deprived of their rights, without notice and without fault or negligence, unless a remedy exists beyond the express provisions of the statute." The learned surrogate also in the same opinion used this language: "It is true, the revised statutes define the jurisdiction of the surrogate, and direct its exercise 'in the cases and in the manner prescribed by the statutes of the state' (2 Rev. Stats., 3d ed., p. 318, sec. 1); but the power to take the proof of wills being given generally, the mode of its exercise in a case not provided for by statute, must be regulated by the court in the exercise of a sound discretion according to the peculiar circumstances of each particular case. For example, there can be no doubt that a legatee or party interested in a later will, discovered after a previous will has been admitted to proof, has a right to have the last will proved and letters testamentary issued thereon. But there cannot be two last wills and two sets of letters at the same time. It is incidental, therefore, to the exercise of jurisdiction in taking probate of the last will, and the consequent grant of letters, to revoke the first probate and the first letters testamentary." If this be a correct declaration of the law (and we so regard it), section 1423 of the Code of Civil Procedure is merely a statement of the rule already in effect.

In *Gaines* v. *New Orleans*, 6 Wall. (73 U. S.) 642, 704, [18 L. Ed. 950, see, also, Rose's U. S. Notes], the court said: "But it is said the probate of the will in dispute cannot stand, because there was no direct action by the Louisiana court annulling the probate of the will of 1811. This was not necessary. The probate of the will of 1813, by the mere fact of its probate, necessarily annulled the will of 1811, so far as its provisions were inconsistent, and so far as the estate was not legally administered under it. And this precise point was decided in the Hennen case."

In *Gaines* v. *Hennen*, 24 How. (65 U. S.) 553, 567, [16 L. Ed. 770, see, also, Rose's U. S. Notes], the following language was used: "Courts of probate may for cause recall or annul testamentary letters, but they can neither destroy nor

CLXXX Cal.—37

revoke wills; though they may and often have declared that a posterior will of a testator shall be recognized in the place of a prior will which had been proved, when it was not known to the court that the testator had revoked it.''

In 3 Redfield on the Law of Wills, second edition, 123, 124, *Waters* v. *Stickney,* 94 Mass. 1, [90 Am. Dec. 122], is cited with approval as a learned examination of the powers of probate courts in Massachusetts and ''incidentally throughout the country, and in England.'' And that case is cited with warm approval in the opinion in *Cousens* v. *Advent Church,* 93 Me. 292, [45 Atl. 43].

In *Bowen* v. *Johnson,* 5 R. I. 112, [73 Am. Dec. 49], the court emphatically declares the implied power, in the absence of any statute, of a court of probate to revoke probate of a will once granted by it upon discovery of a later testament, citing, with approval, *Campbell* v. *Logan,* 2 Bradf. Sur. (N. Y.) 90, and *Schultz* v. *Schultz,* 10 Gratt. (Va.) 358, [60 Am. Dec. 335]. Other cases supporting this same authority of probate courts to probate later wills are *Vance* v. *Upson,* 64 Tex. 266, *Gale* v. *Nickerson,* 144 Mass. 415, [11 N. E. 714], and *Cunningham* v. *Souza,* 1 Redf. Sur. (N. Y.) 462.

That there is some authority holding or seeming to hold that the profert of a later will is a contest of one previously admitted to probate is true, but the weight of authority is the other way. In *State ex rel. Wood* v. *Superior Court of Chelan County,* 76 Wash. 27, [135 Pac. 494], the court granted a writ of prohibition on the ground that a contest of a probated will involved in the presentation to the probate court of a later will was barred by a statute of limitations. The question here involved was not discussed and apparently was not suggested. *Hardy* v. *Hardy's Heirs,* 26 Ala. 524, and *Watson* v. *Turner,* 89 Ala. 220, [8 South. 20], were also cited by respondents.

The first of these cases was an appeal from an application to have a later will admitted to probate after the expiration of five years from the probate of an earlier testament. The law of Alabama provided that a will might be contested by a bill in chancery within five years after its admission to probate. As the provisions of the later writing were in part inconsistent with the earlier one, the court held that the offer amounted to a contest which was neither in the mode nor within the time prescribed by the statute. No authorities

are cited in the brief opinion and the question here discussed seems not to have been considered. In the later case the decision in the Hardy case is followed and the court lays stress upon the fact that the ancient power of courts of equity to probate later wills is, in Alabama, entirely taken away by the statute permitting courts of chancery to entertain bills of contest. *Gaines* v. *Hennen* is cited, and the court says: "Prior to this statute, there can be no doubt of the fact that the inherent jurisdiction of probate courts in this country, as of ecclesiastical courts formerly in England, embraced the power to set aside the probate of a will at any time upon the discovery of a posterior will of the testator, and upon proper proof of its execution by the testator." The Alabama cases, therefore, must be regarded merely as interpretations of the peculiar statute of that state. In this connection it is well to remember that proof of a writing as a will as well as will contests in California are committed to the superior court sitting in probate.

Concluding the discussion of this branch of the case we decide that the lower court was clothed with jurisdiction to consider the offer of the later will by appellant and the objections to it by respondents.

Appellant's next contention is that the case of the successful contestants of the later will was dependent entirely upon opinion evidence, and that the opinions of the witnesses were unsupported by any evidence of facts which would indicate incapacity to make a will.

It was the theory of respondents that Mr. Moore became so feeble of mind as to be totally unfit to make a will in 1875, and that from that time nutil the day of his death the incapacity continued. Some of them testified that ever since 1875 he had been dirty, blasphemous, given to amorous approaches to women, and that he always appeared irrational, yet two of the witnesses did not apparently have any scruples against acting as executor and executrix, respectively, of their uncle's first will. There is no mistaking the theory upon which respondents opposed the later will because their counsel, early in their brief, make the following declaration: "We make bold to assert that at all times from the year 1875 up to the twelfth day of May, 1914, when Thomas W. Moore died, he was a driveling idiot; that his mind was absolutely unsound; that he was childish and simple, and was so regarded

by all persons.　Further, that as administrator of the estate of William H. Moore, deceased, he was no more than a rubber stamp in the hands of his attorneys and advisors.''

In view of these theories of the contending parties and the wide scope of the testimony describing events extending over a period of many years, it became very important to appellant to get into the record authentic evidence of the conversation and conduct of the testator at any time during the years between 1875 and his death, which would tend to support the theory that he was of sound mind and not an imbecile.　If any such material evidence was improperly excluded, appellant is entitled to a new trial.　We think there was such error committed and are, therefore, spared the task of deciding the correctness or fault of the contention that the opinions of the witnesses of respondents were unsupported by sufficient evidence of facts.　In other words, we shall assume that the verdict was based upon conflicting testimony.

Before discussing the evidence excluded it may be well to quote some of the testimony of Mr. Moore, given in a proceeding pending in Judge Graham's court, in San Francisco, twelve days before the execution of the later will.　He had made application for change of guardian, and was examined and cross-examined as a witness in open court.　Proof of his testimony there given was offered and received.　It was in part as follows:

Thomas W. Moore, called as a witness in his own behalf, being duly sworn, testified as follows:

"Mr. Cantrell: Q. Who is your present guardian?

"A. William A. Moore.

"Q. What relation is he to you?

"A. He is a nephew of mine.

"Q. How many times have you seen your guardian, Mr. Moore, in the last two years?

"A. I have seen him about three times.

"Q. About three times in the last two years?

"A. He has called on me about three times in the last eight years.

"Q. Has he ever provided a home for you, or a residence?

"A. No, sir.

"Q. Has he ever asked you to go down and live with him at Pescadero?

"A. No, sir.

"Q. Where does he live now?

"A. Pescadero.

"Q. How far is that from here?

"A. About fifty miles.

"Q. Were you in San Francisco during the time of the earthquake and fire here?

"A. Yes, sir.

"Q. Did your guardian come up to attend to you in any way?

"A. No, sir. I never saw him for a year after that.

"Q. He left you entirely on your own resources to hunt a home for yourself?

"A. Yes, sir.

"Q. Your physicians reside in this city and county?

"A. Yes, sir. All of them.

"Q. Where do you think that you get proper treatment for your complaint?

"A. I would not take treatment anywhere else but in San Francisco.

"Q. You don't think you could be treated properly elsewhere?

"A. No, sir, I have tried nearly all the doctors in the world. I have traveled all over Europe hunting doctors.

"Q. Where are you living now?

"A. On Steiner Street—1114 Steiner Street.

"Q. Who got that place for you?

"A. I got it.

"Q. Your present guardian never provided a place for you to live in at any time?

"A. He did not provide a place for me.

"Q. At the time that the guardian was appointed in Judge Troutt's Department did he make any representations to the court what he would charge?

"A. He said he never wanted a cent. He said, 'He is my uncle'; and he never wanted a cent.

"The Court: Q. What are the relations between you and your guardian now—friendly?

"A. He is my nephew.

"Q. Do you want him to continue to act as your guardian?

"A. No, sir."

On cross-examination he testified, in part, as follows:

"Mr. Craig: Q. You say he does not give you money enough—how much money does he give you?

"A. I get six hundred dollars a year.

"Q. And how much do you want?

"A. I want seventy-five dollars or one hundred dollars a month. I need that very bad because when that fifty dollars was allowed me everything was very cheap and now it is very high. I can't buy my clothes. I bought all my own clothes since he has been my guardian. He never bought me but one suit—one coat. . . .

"Q. Isn't fifty dollars enough to pay your board and get your clothes?

"A. No, sir. It does not satisfy my desires at all.

"Q. How much does your board cost you?

"A. I cannot get board less than thirty dollars.

"Q. And you have twenty dollars left for your personal expenses?

"A. Yes, sir.

"Mr. Cantrell: Q. Part of your expenses, of course, is your physician. You have a running expense with the physician at all times?

"A. Yes, sir.

"Q. You say you lived at Stanyan Street before you lived on Steiner Street; who provided that place for you on Stanyan Street?

"A. I did.

"The Court: Q. You feel that you are capable of getting your own home?

"A. Yes, sir.

"Q. You don't want your guardian hanging over you all the time?

"A. No, sir. I don't want the guardian around me at all.

"Q. What do you want this young man removed for?

"A. Because he don't pay me, and don't see me, and don't pay any attention to me.

"Q. You get your fifty dollars every month.

"A. Yes, sir.

"Q. What else can you expect from a guardian?

"A. I want him to pay me more money.

"Q. Is that the only trouble?

"A. That is the main trouble.

"Q. Do you understand the situation here—there is a heavy mortgage on this ranch—eight thousand dollars?

"A. Yes, sir.

"Q. And it takes nearly all the income from the ranch to pay for that mortgage outside of keeping you?

"A. Not by a long shot. He has the ranch rented for one thousand eight hundred dollars a year for the last five years."

In answer to his own counsel he testified as follows:

"Q. You are very friendly with Captain Dahler?

"A. He is my friend, I know.

"Q. He has been very good to you?

"A. Very good to me, indeed. He is better than my guardian a great deal.

"Q. How long have you known Mr. Dahler?

"A. About a year."

And to questions by the court he replied:

"Q. Where did you meet Mr. Dahler?

"A. I met him first at Mrs. Sheerer's.

"Q. And you and Mr. Dahler became friends?

"A. Yes, sir.

"Q. Mr. Dahler says he is willing to assume this guardianship and act as companion to you?

"A. Yes, sir.

"Q. Have you ever stopped at the Tolle home?

"A. No, sir.

"Q. How about you and Mrs. Oscar Tolle—are you good friends?

A. I don't know her hardly at all."

Notwithstanding this testimony the jury was convinced of the testator's imbecility, perhaps upon the theory that the apparent lucidity of the old man's mind in 1908, as shown by his testimony, was but due to a temporary absence of symptoms of a life-long condition of mental incompetency. It, therefore, becomes apparent that testimony given by Mr. Moore at any other period of his life after 1875 might be of great value to the jurors and its exclusion, therefore, highly prejudicial to the proponents of the second will. Mr. Warren Olney, who for many years had represented Mr. Moore as his attorney, was called as a witness and testified that in his opinion the testator was of sound and disposing mind during the entire period of their acquaintance. Mr. Olney was shown a document setting forth that which purported to be the testi-

mony of Mr. Moore on the witness-stand at a trial in the superior court of Santa Cruz County. This document was in the form of a transcript of a bill of exceptions, and was indorsed as filed March 12, 1889. Regarding this paper Mr. Olney testified in part as follows: "I recognize the document shown me. It is a correct statement of what transpired in court at the time stated in the document. I prepared this document myself while its contents were fresh in my memory, using the court reporter's notes to check it. The portion shown to me is testimony given by Thomas W. Moore on the witness-stand at the date stated in the document. It is a correct statement of what Mr. Moore said on the witness-stand. Looking at the document does not sufficiently refresh my memory to cause me to remember and narrate what Mr. Moore testified to, or the other facts stated in the document, but I know that the document is a correct statement of what occurred." The court refused to allow the witness, testifying from the document, to state what Mr. Moore testified to while on the witness-stand on the occasion indicated and also denied the offer of defendant to put parts of the transcript in evidence to show the date and nature of the proceeding and Mr. Moore's testimony. [4] Mr. Olney's testimony was clearly admissible. (Code Civ. Proc., sec. 2047). Respondents' counsel concede that perhaps the reporter who made and transcribed the notes of Mr. Moore's testimony would be permitted to read from his transcript, but deny that anyone else might do so. They also call attention to the fact that the transcript did not purport to contain all the testimony of the witness. Both contentions are without force. Mr. Olney had heard the testimony as well as the reporter. He prepared the document himself while the contents were fresh in his memory "using the court reporter's notes to check it." True, it was in narrative form, but it contained "a correct statement of what Mr. Moore said on the witness-stand." The omission of the questions which elicited Mr. Moore's answers made them none the less his statements and they were proper matters for the jury's consideration, under appropriate instructions, whether they were all or only part of his declarations. It would seem from Mr. Olney's testimony that the transcript contained all of his client's testimony, but that is not material, as it is perfectly competent for a litigant to offer a part of the narrative of a witness for the purpose of illustrat-

ing his mental condition. But counsel for respondents call attention to that part of section 2047 which provides that a witness *"may* testify from such a writing, though he retain no recollection of the particular facts," and insist that the admission or rejection of such testimony is within the sound discretion of the trial court. Even if this were the meaning of the quoted language, we would be constrained to declare that under the revealed circumstances the court abused its discretion. **[5]** We are convinced, however, that the quoted language from section 2047 of the Code of Civil Procedure is mandatory. That a stenographer has a right to read from notes of testimony taken at the time there can be no doubt. (*People* v. *Sexton,* 132 Cal. 37, [64 Pac. 107] ; *Burbank* v. *Dennis,* 101 Cal. 90, [35 Pac. 444] ; *People* v. *Ammerman,* 118 Cal. 23, 32, [50 Pac. 15].) The tendency of courts, although there is some difference in the practice in different jurisdictions, is toward liberality rather than strict technicality in the application of the rules with respect to the admission of this sort of evidence, as may be seen from an examination of the text and citations in 1 Greenleaf on Evidence, sixteenth edition, section 439b. It has been held in Illinois that a witness who is testifying from recollection, when refreshed by a memorandum consisting of a transcript of testimony in another case, may adopt the language of the transcript as relating the substance of the facts within his recollection. (*Iglehart* v. *Jernegan,* 16 Ill. 513, 520.) *Solomon R. R. Co.* v. *Jones,* 34 Kan. 443, 458, [8 Pac. 730], is very similar to the case at bar. There the attorney who had prepared the bill of exceptions in another case and had an original recollection from his insight into the case, but depended largely upon the transcript, was permitted to read from the bill. We will not lengthen this opinion by quotation from this bill of exceptions, but merely say in passing that the testimony of Mr. Moore, as set forth in the rejected memorandum, was quite as lucid as that adduced in Judge Graham's court many years later.

**[6]** The court gave the familiar instruction with respect to the presumption of law that evidence willfully suppressed would be adverse if produced. This was error because the record fails to disclose any instance of suppression of evidence or anything that could be properly construed as such withholding of facts in defendant's possession. That, under the circumstances, the error was prejudicial there can be no

doubt, and this is emphasized when we note that one of the counsel for respondents, in his argument, sought to apply the rule subsequently announced in the instruction to the circumstance that no person named in the will had been called as a witness. [7] Failure to call as witnesses those named as legatees is not suppression of evidence, and there was no showing that under the facts of this case it became such suppression. It is argued, however, that no advantage may be taken of the erroneous statement of counsel in argument, because no exception was taken to it and it was not assigned as error. (Citing *People* v. *Babcock*, 160 Cal. 537, 545, [117 Pac. 549], a case in which not erroneous statement of law, but alleged misconduct was the issue.) The alleged error was not in the argument merely, but in the subsequent instruction which seemed to ratify the misapplication of the rule with reference to suppression of evidence. Under the authority of *Estate of Carpenter*, 94 Cal. 406, 419, [29 Pac. 1101], and *Thomas* v. *Gates*, 126 Cal. 1, [58 Pac. 315], the giving of the instruction under the circumstances must be held error.

The judgment is reversed.

Lennon, J., Wilbur, J., and Shaw, J., concurred.

Mr. Justice Olney did not participate in the decision.

ANGELLOTTI, C. J., Dissenting.—I cannot concur in the conclusion that the superior court could properly entertain the petition for the probate of the alleged later will, in the face of the judgment admitting the will of January 13, 1896, to probate. That judgment had become final, and more than one year having elapsed from its entry without any contest, the probate of such will is conclusive against the world, except infants and persons of unsound mind. It is so expressly provided by section 1333 of the Code of Civil Procedure. The whole matter of wills is regulated in this state by statute. Under our statute, as has often been said, the proceeding in proof of a will is a proceeding *in rem,* "to determine the legal status of a written instrument," in which all persons are required to present their claims and by which the world is bound. (See *Estate of Baker*, 170 Cal. 578, 585, [150 Pac. 989]; *Estate of Allen,* 176 Cal. 632, [169 Pac. 364].) A judg-

ment admitting a written instrument to probate as the will of a deceased person is necessarily a judgment that the instrument is *the* will of the deceased, which, of course, means that it is his last and only effective will. When a paper is offered for probate as the will of a deceased person, if any person interested claims that it is not the true will for the reason that there is a later will, he unquestionably may contest the paper offered on that ground, for his contention is one "substantially affecting the validity of the will" offered.· (Code Civ. Proc., subd. 4, sec. 1312.) As in the case of original probate, such a contest may be made after.probate on the ground that the admitted will is not *the* will, because of the execution of a later will. The petition for probate necessarily tenders to the whole world the issue that the paper offered is *the* will of the deceased, and the whole world is bound by the judgment except in so far as the statute permits further proceedings.

The only further proceeding authorized by the statute is the contest of the validity of the admitted will, which must be instituted within one year from probate, with the right to infants and persons of unsound mind to so contest within one year after their respective disabilities are removed. It is my opinion that in the absence of any such contest within the year, the status of the instrument as the last will of the deceased is conclusively and for all time established as against all interested parties in so far as any proceeding in the probate court is concerned. This it seems to me is substantially recognized in all our previous decisions, for even in *Estate of Walker,* 160 Cal. 547, [36 L. R. A. (N. S.) 89, 117 Pac. 510], all the justices concurred as to the question of finality of the proceedings in probate, and the probate of the subsequently discovered will was justified by the majority of the justices concurring in affirmance as being solely for the purpose of establishing a foundation for the prosecution by the beneficiaries of their rights in equity. It was certainly expressly recognized in *Estate of Marx,* 174 Cal. 762, [L. R. A. 1917F, 234, 164 Pac. 640], as is shown by the majority opinion herein.

The effect of the majority opinion in this case apparently is that a decree admitting a will to probate is not an adjudication that the will so admitted is *the* will of the deceased, but simply that it is an instrument that was at one time duly executed as a will, which will stand as the will pending the production and

probate of a later instrument so executed. Such I do not believe to be the theory of our statutory system relative to the proof of wills. Therefore, I am constrained to dissent from the judgment.

Lawlor, J., concurred.

Rehearing denied.

Lawlor, J., Olney, J., and Angellotti, C. J., voted for a rehearing. Shaw, J., Wilbur, J., and Lennon, J., voted against a rehearing.

Melvin, J., was absent.