# Wytheville

IN RE WILL OF SUSAN BENTLEY.

June 10, 1940.

Record No. 2226.

Present, All the Justices.

The opinion states the case.

*J. Thomas Hewin, Sr.,* for the appellants.

*Thomas I. Talley,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

Susan Bentley, a resident of the city of Richmond, died on February 28, 1934. On April 3, 1934, a paper writing dated January 19, 1917, was presented to the court below and in an *ex parte* proceeding was duly proved, established and admitted to probate as and for her true last will and testament.

On July 7, 1939, J. Thomas Hewin presented to the court below and offered for probate as and for the true last will and testament of the deceased a paper writing dated February 7, 1922, in which he was named as executor. The proponent offered to prove the due execution of the instrument and moved the court that he be permitted to qualify as executor thereof.

The beneficiaries under the will theretofore admitted to probate opposed the probate of the purported will of February 7, 1922, and offered to prove that the testatrix at the time of the execution of the latter instrument was not of sound mind and was incapable of making a will.

The dispositions by the testatrix of her real and personal property under the first will are inconsistent with those in the subsequent will.

The lower court refused to consider the probate of the purported will of February 7, 1922, for the reasons thus stated in its order: "And no bill or other proceedings having been filed, within two years (that being the time limit fixed by statute existing 3rd April, 1934) from the order of probate and adjudication of April 3rd, 1934; and the Court being of opinion that the order of April 3, 1934, is forever binding as stated in Section 5259 Code of Virginia, doth refuse to consider the paper writing dated February 7th, 1922, and this day presented and offered for probate."

From this order J. Thomas Hewin, the executor named in the purported will of February 7, 1922, has appealed.

At the time the first will was probated, on April 3, 1934, Code, section 5259, provided, among other things, that after the probate of a will under sections 5249 or 5259, "a person interested, who was not a party to the proceeding, may proceed by bill in equity to impeach or establish the will, on which bill a trial by a jury shall be ordered to ascertain whether any, and if any, how much of what was so offered for probate, be the will of the decedent."

The section further provided that such bill should be filed within two years* from the date of the entry of the order of probate by the court, either in the exercise of its original jurisdiction or on appeal from the clerk, or from the date of the entry of the order of probate by the clerk when no such appeal is taken, and that "If no such bill be filed within that time, the sentence or order shall be forever binding." Code, section 5260, provides a saving for non-residents and persons under disabilities.

It will be observed that section 5259 in terms places a limitation on the time within which a suit in equity may be brought "to impeach or establish" a will. It places no limitation on the time within which a will may be probated.

Under Code, section 5263, the title of a *bona fide* purchaser for value of real estate from the heir of a decedent is protected against a devise of the lands by the decedent,

---

*This period was reduced to one year by amendment to this section. Acts 1934, ch. 339, p. 523.

of which the purchaser had no notice, unless the will be probated within one year of the death of the testator.

■ Except for this latter section there is no statute in Virginia placing any limitation of time upon the probate of a will. *Bliss* v. *Spencer*, 125 Va. 36, 57, 99 S. E. 593, 5 A. L. R. 619.

■■ It is well settled in this State and elsewhere that the judgment of a probate court of competent jurisdiction admitting a paper to probate is in the nature of a judgment *in rem*, and as long as it remains in force binds conclusively all parties and all other courts. *Culpeper Nat. Bank* v. *Morris*, 168 Va. 379, 387, 388, 191 S. E. 764, and cases there cited; Freeman on Judgments, 5th Ed., Vol. II, section 812; 28 R. C. L., section 376, p. 375; 68 C. J., section 597, pp. 874, 875. Such a judgment of probate can not be collaterally attacked and can only be assailed in the manner provided by statute. *West* v. *West's Ex'rs*, 3 Rand. (24 Va.) 373, 386; *Robinson* v. *Allen*, 11 Gratt. (52 Va.) 785, 787; *Norvell* v. *Lessueur*, 33 Gratt. (74 Va.) 222; *Avant* v. *Cook*, 118 Va. 1, 4-6, 86 S. E. 903.

■ But it is equally well settled that the conclusiveness of the judgment of probate of an earlier will does not preclude the probate of a later will for the reason that, as we shall presently see, the probate of the later will is not an attack on the judgment of probate of the earlier will.

The precise question was before this court in *Schultz* v. *Schultz*, 10 Gratt. (51 Va.) 358, 60 Am. Dec. 335, decided in 1853, which appears to be a leading case on the subject. In that case a subsequent will was presented to the probate court more than seven years after the first will had been probated. The applicable statute (Code 1819, ch. 104, section 13, p. 378) provided that a person interested might within seven years after the probate of a will file a bill in chancery to contest its validity, and that "no such party appearing within that time, the probate shall be forever binding," with a saving for non-residents and persons under disabilities.

Nevertheless, this court, with full realization of the nature and conclusiveness of the judgment, held that the court by admitting one will of a deceased to probate had not exhausted its jurisdiction over the subject of the testamentary disposition of the decedent's estate and was not precluded by such judgment of probate from passing upon the probate of a later will subsequently propounded.

■■ This court pointed out that a man's last will may consist of several different testamentary papers of different dates and that it is not indispensable that they should be probated at the same time. Moreover, it was said that if after the probate of an earlier will a later will is found which "contains an express clause of revocation of former wills, or contains a disposition of the estate incompatible with the provisions of the former, or from its general character may be inferred to be an entire new instrument; intended to supersede the former, the court of probate should receive and admit it to probate, leaving it to have such effect as the law would necessarily attach to it," and that before probating the second will it was not necessary to file a bill in chancery under the statute to set aside the probate of the former will. (10 Gratt. (51 Va.), at page 375, 60 Am. Dec. 335.)

To the same effect, see *Waters* v. *Stickney,* 12 Allen (Mass.) 1, 90 Am. Dec. 122; *Bowen* v. *Johnson,* 5 R. I. 112, 73 Am. Dec. 49; *Merrill* v. *Boal,* 47 R. I. 274, 132 A. 721, 45 A. L. R. 830; *Vance* v. *Upson,* 64 Tex. 266; *In re Moore's Estate,* 180 Cal. 570, 182 P. 285; *Murrell* v. *Rich,* 131 Tenn. 378, 175 S. W. 420; *Cousens* v. *Advent Church,* 93 Me. 292, 45 A. 43. In each of these cases *Schultz* v. *Schultz, supra,* is cited with approval.

See also, *Gaines* v. *Hennen,* 65 U. S. (24 How.) 553, 16 L. Ed. 770;* *Gaines* v. *New Orleans,* 73 U. S. (6 Wall.) 642, 18 L. Ed. 950.*

---

*These cases involve the probate of two wills by Daniel Clark, a resident of Louisiana. The rights of various parties claiming under the respective wills were the subject of no less than eleven appeals to the United States Supreme Court. *Davis* v. *Gaines,* 104 U. S. 386, 406, 26 L. Ed. 757.

But the appellees insist that the offer to probate the later will is in effect a contest of the earlier will, and that it does not conform to Code, section 5259, which prescribes the exclusive method of contesting a will probated *ex parte,* namely, by a bill in equity filed within two years of the order of probate.

▇ Whether the application to probate a later will whose provisions are inconsistent with those of a will previously probated is in effect a contest of an earlier will and may not be heard after the expiration of the statutory period for contesting the first will, is a question on which the courts are divided. The weight of authority seems to be that the offer of probate of a second will is not such a contest within the meaning of a statute similar to Code, section 5259.

In Woerner on The American Law of Administration (Including Wills), 3d Ed. Rev., Vol. II, section 217, p. 719, it is said: "In most States, but not all, a subsequent will may at any time be probated, such proceeding not being considered a contest of the will theretofore probated, though inconsistent with its dispositions."

Those authorities which hold that the probate of a subsequent will is not a contest of an inconsistent will theretofore probated reason thus:

▇ The order of probate of the first will settles all questions as to the formality of its execution and the capacity of the testator. Upon inquiry the court ascertains and finds that the instrument has been executed and witnessed in the proper manner by one who is capable of making a testamentary disposition of his property.

▇ The probate of the subsequent will does not attack the due execution of the will previously admitted to probate or the testamentary capacity of the testator. It merely establishes that by a testamentary writing of later date, likewise properly executed by a person of testamentary capacity, the testator has made dispositions of his property which are inconsistent with those found in the will previously probated. It is true that both instruments can not stand. But the first will is revoked by the act of the testa-

tor in executing a subsequent will, and not by the judgment of the court in admitting the later will to probate. The result flows not from any proceeding attacking the probate of the first will, but from the law which gives vitality and force to the last testamentary act of the testator.

On the other hand, a suit in equity to contest a will which has been admitted to probate is a direct attack on the judgment of probate. In such a proceeding if the court ascertains that the will previously admitted to probate is not the true last will and testament of the testator, the judgment of probate is annulled and set aside.

Typical of this line of cases are, *In re Moore's Estate,* 180 Cal. 570, 182 P. 285, 289; *Vance* v. *Upson,* 64 Tex. 266, 269; *Murrell* v. *Rich,* 131 Tenn. 378, 175 S. W. 420, 427. See also, 107 A. L. R. 252, note.

There are, however, cases which hold that to probate a later will whose provisions are inconsistent with those of a will previously admitted to probate is in effect a contest of the earlier will within the meaning of a statute similar to Code, section 5259. See *Watson* v. *Turner,* 89 Ala. 220, 8 So. 20; *Couchman* v. *Couchman,* 104 Ky. 680, 47 S. W. 858, 44 L. R. A. 136; *Burns* v. *Travis,* 117 Ind. 44, 18 N. E. 45. See also, 107 A. L. R. 252, note.

In *Schultz* v. *Schultz, supra,* this court held that the fact that the time had expired within which a bill in equity could be filed to set aside a will admitted to probate would not preclude the probate of a subsequent inconsistent will. That is to say, the limitation placed on the time for filing a bill in equity under Code, section 5259, does not apply to the probate of a subsequent inconsistent will, for the reason that the offer to probate the subsequent will is not a contest of the first will within the meaning of that section. See Harrison on Wills and Administration, Vol. I, section 138, p. 245; 2 Virginia Law Register (N. S.), pp. 433, 434.

*Schultz* v. *Schultz, supra,* was decided in 1853. It has long been recognized by text writers and by the profession as the settled law in Virginia. See Harrison on Wills and Administration, Vol. I, section 138, p. 245; Page on Wills,

section 321; 2 Virginia Law Register (N. S.), pp. 433, 434.

In a paper entitled "Some Suggested Changes In The Law Of Wills In Virginia", read before the Virginia State Bar Association in 1916 by Hon. R. Gray Williams, and found in 2 Virginia Law Register (N. S.), p. 401, among other matters, it was recommended to the profession (pp. 432-437) that the principles laid down in *Schultz* v. *Schultz, supra,* be changed by legislative enactment; that some limitation be placed on the time within which a will might be offered for probate; that the offer to probate a subsequent will be placed on the same footing as the institution of a contest of the will already probated; and that section 2547a of the Code of 1904 (as amended by Acts 1914, ch. 303, p. 511; Acts 1916, ch. 292, p. 509)*, protecting the title of a *bona fide* purchaser for value of real estate from the heir of a decedent after the lapse of a specified time, be amended to include the title of a *bona fide* purchaser for value of real estate from a devisee. While it appears from the revisors' note to section 5259 of the Code of 1919 that they adopted some of the recommendations made in this article, no attempt was made to change the principles laid down in *Schultz* v. *Schultz, supra.* Nor has the General Assembly at any of its subsequent sessions seen fit to do so.

It is true that in *Schultz* v. *Schultz, supra,* the applicable statute (Code 1819, ch. 104, section 13, p. 378, corresponding to the present Code, section 5259) providing for the contest of a will probated *ex parte,* in terms confined the inquiry to the identical papers which were probated or rejected in the proceeding. By the language of the statute the jury was directed to ascertain whether "the writing produced" be the will of the testator. There was no provision for requiring the production of other testamentary papers. *Cf.* Revisors' Note, Code 1919, section 5259.

The revisors of the Code of 1919 added to section 5259 this sentence, "The court may also, if it deem proper, require all testamentary papers of the same decedent to be produced, and direct the jury to ascertain whether any,

*Code 1919, section 5263.

or if there be more than one, which of the papers produced, or how much of what was so produced, be the will of the decedent." The obvious purpose of this amendment was to conform section 5259 (pertaining to probates *ex parte*) to section 5257 (pertaining to probates *inter partes*), and to permit the jury, in a contest under either section, to pass upon all testamentary papers of the testator, whether admitted to probate or not. See Harrison on Wills, Vol. I, section 140, p. 248; 2 Virginia Law Register (N. S.), p. 437; Revisors' Note, Code 1919, section 5259.

But there is nothing in the language of the amendment to section 5259, or in any other part of the statute, which suggests that the proponent of a subsequent will must offer it for probate only in an equity suit brought to contest the will theretofore probated.

 Our conclusion, therefore, is that the offer to probate the second will in the instant case was not a contest, within the meaning of Code, section 5259, of the will previously admited to probate.

We are not unmindful of the fact that it would greatly promote the stability of titles to real estate if some limitation were placed upon the time within which a will may be probated after the death of the testator, or if the probate of a subsequent will were placed upon the same footing as the institution of a contest of a will already probated. These, however, are matters for the General Assembly and not for the courts.

For the reasons stated we are of opinion that the trial court erred in refusing to hear the application for the probate of the writing dated February 7, 1922.

Accordingly, the order appealed from is reversed and the cause is remanded for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*

GREGORY, J., dissenting.

There can be but one true last will and testament of a testator. We have in Virginia an adequate and all-embrac-

ing statutory procedure in Chapter 212 of the Code for the judicial determination of what constitutes the last will of a testator. When the statutory procedure has been carried out and the probate court has finally pronounced the paper or papers offered the last will of the testator, and no contest is instituted within the statutory time (two years in the case at bar), right or wrong that judgment stands binding all persons (except those embraced within section 5260) in the absence of fraud, etc. (Code, section 5258), and it cannot be attacked in any collateral proceedings.

All wills, with very few exceptions, are probated *ex parte*. The admission of a will to probate is conclusive of its validity, which can then be drawn into question only on an issue *devisavit vel non* within the time allowed by the statute.

In this case the probate of the first will and the elapse of the time prescribed in the statute for a contest constituted a final judgment establishing this will as the true will. There must of necessity be a finality to the question of what is the true last will of a testator, and that finality rests in the judgment of probate. To admit another later inconsistent paper to probate after the bar of the statute has fallen would be to permit the impeachment of the former judgment in a collateral proceeding.

The case of *Schutlz* v. *Schultz,* 10 Gratt. (51 Va.) 358, 60 Am. Dec. 335, is invoked as authority for the appellant. That case was decided in 1853 by a divided court, Judges Moncure and Samuels dissenting. I do not think it should control.

The court in the *Schultz Case* arrived at its conclusion by an extension of familiar and well-determined principles. It was observed that the jurisdiction of a court of probate is not exhausted by the admission to probate of testamentary papers passed upon at one time, and that if a codicil to a will already probated be found later it will be admitted to probate. Similarly, if a will supplemental to the first be found later, it will be admitted to probate. Again, if a will inconsistent in part with the first will and containing no clause of revocation should turn up later, it will be ad-

mitted to probate, and the court will resolve the two wills as best it can. All this is well-settled law, but the court then announces that if a later will, wholly inconsistent with the first or containing an express clause of revocation, should be found, it will be admitted to probate, even though the bar of the statute has fallen. The court speaks of this as if it were a necessary corollary to the foregoing principles. I feel that this was not an inescapable conclusion, and not necessary to a decision of the case.

The policy of the legislature has been increasingly to narrow the time within which a judgment of probate may be attacked. The time has been gradually whittled down from seven years, the period allowed at the time of the *Schultz Case,* to one year, the present limitation. This narrowing has been due partly to increased rapidity in the dissemination of information and partly to an increased volume of real estate transfers. As our economic life became more complex, it was found necessary to insist on greater stability of titles, and the legislature kept pace with this need by providing less and less time within which a transfer by will might be attacked.

At the time of the *Schultz Case,* the speedy settlement of land titles passing by will was not so great a desideratum as it is today; the legislature allowed a leisurely seven-year period in which such titles might be attacked, and it is likely that the court felt that no violence would be done to public policy by not treating the expiration of this period as an absolute bar to the displacement of the first will by one turning up subsequently. Since that time, however, the tremendous increase in population and the migration from rural to urban areas has been attended by rapid subdivision of land and an enormous increase in the transfer of real estate titles. Wherever these titles pass by will, the legislature has seen fit to safeguard their stability by providing in section 5259 a one-year limitation on the attack of probate. To hold, as the majority does, that an offer to probate a subsequently-appearing will is not a contest of the former will within section 5259 is to make a distinction

in form where none exists in substance. As in the case at bar, to allow the probate of the second will is to destroy the efficacy of the first and is in contravention of the announced public policy of providing stability of land titles. The law must have "stopping-places," and I feel that the expiration of the statutory period for the attack on a judgment of probate is just such a necessary stopping-place.

The purported holding of the *Schultz Case* is that the expiration of the period for contest of a judgment of probate is not a bar to the probate of a later-appearing will. Upon close examination I find this to be dictum. The holding of any court must be limited to the particular facts of the case, and the rule of *stare decisis* requires no adherence to what a court indicates would be its holding on a set of facts not before it.

In the *Schultz Case* the proponents of the purported second will had been out of the state until shortly before suit was instituted. There was a provision in the statute exempting such persons from the seven-year limitation. When the second will was offered in the County court, which was the court of probate, the executrix of the first will offered in bar the record of probate of the first will. "The court, however, decided to hear the evidence, being of opinion that the probate of the paper of the 22d of May 1818 did not preclude them from hearing the evidence of the validity and due execution of the paper then produced, nor from admitting the same to record, provided the evidence so offered would authorize them so to do." 10 Gratt. (51 Va.) 358, at page 360, 60 Am. Dec. 335. It was this action of the County court that this court's holding purported to sustain. It will be noted, however, that the County court does not give its *reason* for admitting the evidence as to this second paper. It does not say whether it did so because the proponents thereof had until recently been nonresidents and hence not within the seven-year limitation, or whether, as this court seems to assume, the question of probate would be re-opened regardless of presence or absence from the state. The lower court must be taken merely

to have said that with respect to the facts and parties before it, it would listen to the evidence on the second paper.

This court says (10 Gratt., page 365, 60 Am. Dec. 335), "In this case it sufficiently appears that the complainants were within the saving in favor of persons absent from the state, they being citizens and residents of the state of New York, and no evidence having been offered to show that either of them has ever been in the state of Virginia until a short time previous to the institution of the suit." After holding that the statute providing a saving for persons absent from the state had not been repealed, as the executrix of the first will contended, the court went on (10 Gratt., page 366, 60 Am. Dec. 335), "I think, therefore, the saving in the statute of wills, in favor of persons out of the state, is unaffected by the act of 1826, and that the complainants were not barred from contesting the will of 1818 by the time which had elapsed after it had been admitted to probate before their bill was filed."

This was determinative of the question at hand, and rendered all other questions moot. The further discussion as to the jurisdiction of the probate court to admit to probate a later will the proponents of which were not saved by the non-resident statute is dictum. The square holding of the court can only be that the proponents of the purported later will were absent from the state and were hence within the saving provided by the statute.

In the case at bar the appellant, who is the proponent of the second will, is not embraced within the saving statute (section 5260) as were the proponents of the second will in the *Schultz Case*. Here the two-year period for the contest had expired, and the appellant was neither an incompetent nor a non-resident. As to him there could be no question of the finality of the probate of the first will.

The decision of the majority will tend to disrupt the stability of land titles and result in casting doubt and uncertainty on those that have been passed to devisees by wills. No devisee could safely transfer the title of property which has been left to him by will, nor could the purchaser from

such devisee be protected in event another will is brought to light in which the property is devised to a subsequent devisee.

Code, section 5263, grants protection only to a purchaser from an heir at law against a devisee. It does not protect such a purchaser from a devisee under a will against a subsequent devise of the same property to another devisee. The only other related section is 5397, and it only protects a creditor of the estate against an heir at law.

If I am incorrect in my construction of the opinion in the *Schultz Case,* and it holds what the majority say it does, then I think the case should be modified and that we should give legal effect to a final judgment of probate. We are not bound by the rule of *stare decisis* where to be so bound would upset land titles. It has been the general belief of the profession that after a final judgment of probate it is safe to pass the title of real estate which has been devised. Whether we will be bound by the rule of *stare decisis* is for the court and not the legislature. We may modify our former opinions when changed conditions and compelling reasons demand it.

No doubt we should respect precedent, because to do otherwise would result in confusion and uncertainty, but we should subject precedent to the test of reason. The law must grow and improve in order to meet changing needs, and if an outmoded precedent fails to meet those needs and the test of reason it should be distinguished or disregarded. To follow this ancient rule, unnecessarily announced in the *Schultz Case* a century ago by a divided court and to the best of my knowledge never again applied by this court, would result in disastrous consequences to titles passing through devisees. That such titles should remain stable and marketable is the public policy of this state. This is sufficient justification for this court to modify the rule.

For these reasons I must dissent.