Chase National Bank of the City of New York, as Trustee under an Indenture between Mabel H. Duell and Others, et al., Plaintiffs, *v.* Anna B. Mackenzie et al., Defendants.

Supreme Court, Special Term, New York County, December 8, 1947.

*Cyril J. Redmond* and *Charles H. Edwards* for plaintiffs.

*Pliny W. Williamson* and *A. Wheeler Palmer* for Anna B. Mackenzie, defendant.

*Thomas A. Ryan* for Helen C. Halliwell, defendant.

*Dana R. Koons* and *William J. Quinn* for Lillian A. Sibley, defendant.

*Ernest E. Wheeler* for Mabel H. Stillwell, defendant.

*Frederick Zorn,* special guardian for David S. Sibley, an infant, defendant.

*Munn Brewer* for Chase National Bank of the City of New York, as executor of Walter S. Halliwell, deceased, defendant.

SCHREIBER, J. This is an action by a trustee for judicial settlement of its accounts and for other relief. Its only controversial aspect concerns the construction of two *inter vivos* trust agreements. Question is presented, as to each such agreement, as to the validity of an attempted amendment thereto. The attempted amendments are attacked, in the one case as unauthorized by the original trust instrument, and, in the other, as improperly executed. The assets comprising the trust fund were in each case conveyed by Walter S. Halliwell, now deceased, and the agreement with the trustee was in each case made by Halliwell, his then wife, Anna Bush Halliwell, now Anna B. Mackenzie, one of the defendants (hereafter referred to as the then wife or the former wife), and his sister, Mabel Halliwell Duell, now Mabel H. Stillwell, one of the defendants (hereafter referred to as the sister).

The first trust agreement, that dated March 7, 1918 (hereafter called the 1918 agreement), divided the trust fund into two equal parts, one for the benefit of Halliwell, and the other for the benefit of the then wife. In 1919, pursuant to powers reserved in the trust agreement, that portion of assets of the trust set aside for Halliwell was withdrawn by him. The controversy with respect to the 1918 agreement thus relates exclusively to the trust for the then wife.

By indenture dated June 19, 1924, Halliwell's marriage having been dissolved in 1920, all the parties to the 1918 agreement assumed to modify that agreement in several respects, the principal one being that the provision therein for the disposition of the principal and income upon the death of the life beneficiary,

the former wife, was eliminated, and provision made, so far as here relevant, for the payment of the principal, upon her death, to " such persons and in such shares· as the said Walter S. Halliwell shall by his last will and testament * * * appoint." By his will, made in 1938, subsequent to his marriage to the defendant Helen Cox Halliwell (hereafter referred to as the widow), he appointed her, her heirs, executors and administrators or assigns to receive the said principal. The will was admitted to probate in 1945.

The original provision of the 1918 agreement governing the disposition of the principal upon the death of the life tenant, the then wife, which provision the 1924 amendment assumes to eliminate, provided in pertinent part for payment of the principal in that event to such lawful issue as might be born to Halliwell. His sole issue (the issue of his marriage in 1920 to Lillian De Malinowski, which marriage was dissolved in 1938) is the defendant Lillian Ann Sibley (hereafter called the daughter); and the controversy is thus between her (and also, contingently, her infant son, David Scott Sibley) on the one hand and the widow on the other, the latter resting her claim on the will of Halliwell, which in turn depends for its force, as to this matter, upon the validity of the attempted amendment of 1924.

That amendment is assailed by the daughter and by the special guardian for her infant son as unauthorized by the 1918 agreement which, while reserving to the former wife and the sister the right of revocation, makes no mention of a power to amend. It is defended by the widow on the ground that the power of revocation implies the lesser power of modification; that the law did not burden the parties to the 1918 agreement with the necessity of revoking that agreement *in toto,* and then executing a new agreement embodying the altered scheme of devolution, as, by concert, they unquestionably had the power to do.

Cases upon the precise question appear to be wanting in this State. In several cases in which the power to revoke was not as here reserved, but the settlor attempted the challenged amendment upon the consent of all persons beneficially interested, it has been held that such power to amend is embraced within the statutory power (Personal Property Law, § 23) to revoke upon such consent (*O'Hagen* v. *Kracke,* 165 Misc. 4, affd. 253 App. Div. 632; *County Trust Co.* v. *Young,* 262 App. Div. 31). Such holdings are not persuasive on the instant question, however, since the very point at issue is the right to amend to the prejudice of one beneficially interested who did *not* consent.

Nor are those cases controlling (such as *Matter of Cochrane,* 117 Misc. 18, affd. 202 App. Div. 751) in which distinctions have been drawn between trusts in which the settlor has reserved only the power of revocation and those in which the power of amendment has also been reserved, as to the time of taking effect of the transfer to the life tenant of his life estate within the meaning of the transfer tax provisions of the Tax Law, for in none of them was the validity of an attempted amendment directly in question.

In a few cases in other States, the power of amendment has been held implicit in the power of revocation (i.e., *Security Trust Co* v. *Spruance,* 20 Del. Ch. 195) ; and this view is adopted in the Restatement of the Law of Trusts, wherein it is said (§ 331, Comment g) : '' It is a question of interpretation to be determined in view of the language used and all the circumstances whether a power to revoke the trust includes a power to modify it. Ordinarily a general power to revoke the trust will be interpreted as authorizing the settlor * * * to modify the terms of the trust, and it will be unnecessary for the settlor first to revoke the trust and then to create a new trust.''

A similar doctrine is urged by Scott in his treatise on trusts, in which he justly observes (Vol. 3, § 331.1) that it would seem unnecessary for the settlor '' to go through the formality of compelling the trustee to reconvey the property to him and making a new conveyance to the trustee.''

These observations are not precisely applicable to the instant situation, inasmuch as the power of revocation was vested by the 1918 agreement not in the donor of the trust fund, Halliwell (to whom also the fund would revert in the event of revocation), but in his then wife and his sister. He was, however, a party to the 1918 agreement and to the 1924 amendment, so that the reason of the doctrine urged is perfectly applicable here. His former wife and his sister could in 1924 have revoked the 1918 agreement, the fund would have vested in him, and he could then have executed a new trust instrument; or, to put it more accurately perhaps, the several instruments could have been executed and delivered simultaneously. No reason is apparent why a single instrument should not be held to have accomplished the same result.

The contention of counsel for the daughter that the single instrument was resorted to because outright revocation of the 1918 agreement was not attainable, the former wife presumably refusing to join in the revocation of a trust for her benefit, would seem to have more ingenuity than substance; the delivery by

her of the executed instrument of revocation could of course have been withheld by her until the simultaneous delivery to her of the new trust instrument.

The 1924 amendment to the 1918 agreement is accordingly held valid.

The second trust instrument, executed on June 26, 1919, and hereafter referred to as the 1919 agreement, embodied dispositions essentially similar to those made by the 1918 agreement, and was attempted to be amended to similar effect in 1924 by a similar amendatory instrument. With respect to this amendatory instrument, however, the question of power does not arise, the 1919 agreement having contained an express reservation of power not merely to revoke but to modify, amend or alter. The question here is presented by the circumstances attending the completion of the amendatory instrument — its execution by all the three parties other than the trustee, its presentation by the attorney for the former wife to the trustee for execution, its execution by the trustee, the retention of its possession by that attorney, the subsequent insertion in it by that attorney and the attorney for Halliwell and his sister of two pages in substitution of the corresponding pages of the original instrument, without the original pages, however, being removed; and its delivery to the trustee in this condition. It is the contention of the daughter, whose remainder this irregular instrument purported to destroy, that the power of amendment contained in the 1919 agreement was never validly exercised; that if the amendatory instrument be regarded as embodying the original pages only, it was never delivered, and that if it be regarded as embodying the substituted pages, its execution was defective.

The testimony regarding the circumstances surrounding the execution by the trustee of the amendatory instrument in its original form warrant the finding that, despite the request of the former wife's attorney that he be permitted to take the instrument with him for the incorporation of changes desired by the parties, and the trustee's acquiescence in this request, a present delivery of the instrument for the purpose of giving effect thereto, was intended by the parties, and was understood by them to have been effectuated. This conclusion from the testimony is reinforced by consideration of the relation of the amendatory instrument in question to the instrument amending the 1918 agreement, both instruments manifestly being parts of a common design.

Even were it concluded, however, that there was no delivery of the amendatory instrument in its original form, it is unques-

tioned that it was duly delivered in the form in which it is now in evidence. In that form, to be sure, the instrument contains, as to two of its pages, the original sheets and also alternative sheets attempted to be substituted therefor, by consent of all the parties, after the execution and acknowledgment of the instrument in its original form. That fact raises no question, however, as to the validity of the instrument as a whole, but merely as to whether the two minor provisions of the instrument attempted to be excised by the substitution of sheets are still part of the instrument. That question is not now before the court. It can be raised, should any of the interested parties so desire, upon the trustee's accounting herein. The instrument as a whole is valid and effective, and conferred upon Halliwell a valid power of appointment by will.

The trustee also seeks a judicial declaration as to the then ownership of the assets which were conveyed to it on the setting up of the 1918 or 1919 trusts; or in effect a declaration that such assets were the sole property of Halliwell and that his sister had no interest therein. That such was the fact appears unquestionable. The trust agreements themselves, however, recite that the assets constituting the trust fund are being conveyed to the trustee by Halliwell and his sister jointly. The source of these assets was an accumulation of surplus income by the trustees of a testamentary trust for the benefit of Halliwell created by his father's will. The conclusion having been reached by the trustees that the directions of the will pursuant to which such income had been accumulated instead of being turned over to Halliwell, were invalid, conveyed the assets representing such unlawful accumulation not to Halliwell alone but to him and his sister jointly, because of doubts, the basis for which is not apparent, as to whether Halliwell or his sister was entitled to such surplus income as the owner of the next eventual estate. That both Halliwell and his sister subsequently concluded that the doubts thus expressed were unfounded is apparent from an instrument which they made in 1921 in which they recited that the assets received from the testamentary trustee represented income which Halliwell " would in the absence of said indenture have been entitled to receive as the person entitled to the next eventual estate with respect to said trust under said will."

The sister in her answer expressly disclaims all interest in the trust assets and joins with the trustee in seeking an adjudication that she has no such interest, and I so hold.

In the course of the hearing before me counsel for the former wife moved to dismiss paragraphs " 27 " and " 46 " of the

amended complaint on the ground that (1) as to the Federal estate tax, the Bureau of Internal Revenue has exclusive jurisdiction in the first instance to fix such tax and the Supreme Court of New York has no jurisdiction so to do; (2) as to the fixing of the New York estate tax, the Surrogate's Court of Westchester County has exclusive jurisdiction; and (3) that the executor of the Halliwell estate already has invoked the jurisdiction of these authorities by filing a Federal estate tax return and paying a tax and by making a payment of an estimated tax to the New York estate tax authorities.

Decision on the motion was reserved at the trial. The motion is now denied. The allegations in question do not seek to lay a foundation for any application to this court to fix either the State or the Federal estate taxes. The relief sought to be based on those allegations is merely a determination as to whether the trustee may properly contribute toward the payment of such portion of the estate tax as finally determined, which may result from the inclusion of the assets of the trusts in the gross estate of Halliwell. The assets in the hands of his executor available for payment of such taxes are inadequate therefor. It is difficult to see that any substantial question is here presented. Provision for such payment and the determination of proportion of the total tax chargeable to the trust funds by the surrogate is expressly provided by statute (Decedent Estate Law, § 124); nevertheless, all parties in interest join in the request that it be determined that the trustee may make such payment. There is precedent for such determination (*Chase National Bank* v. *Tomagno*, 172 Misc. 63) and it will be made.

The further request of the trustee, that it be authorized, with a view to the stopping of running of interest and penalties upon such taxes, from time to time to make such payments on account of the respective proportionate shares of the two trusts of such taxes and interest prior to the final determination thereof as the trustee may deem expedient, is likewise granted.

The trustee further requests determination as to whether so much of such payment as the trustee shall make on account of interest on such taxes shall be chargeable to the principal or the income of the trusts. This request would require the court to effect an equitable apportionment between principal and income of the penalty interest assessed upon the estate taxes since penalties and interest on such taxes are part of the tax and are apportionable in the same manner as tax principal (*Matter of Clark*, 169 Misc. 202; *Matter of Andrus*, 169 Misc. 740). Power to apportion Federal and State estate taxes being vested in the

Surrogate's Court by section 124 of the Decedent Estate Law, there seems no reason why this court should assume jurisdiction. However, accepting the statement in the brief of counsel for the widow that the former wife and the widow, who are the only parties interested in the principal and income of each trust, agree that such penalty interest is properly payable out of the principal, there would appear to be no dispute with respect to the source of the payment.

Instruction is also requested with respect to the manner of payment of the income under the 1919 agreement to the two beneficiaries thereof, the former wife and the widow. The trustee in determining the time and amounts of such payment is following the course pursued prior to Halliwell's death, he having during his lifetime received the income which now goes to his widow. Neither the former wife nor the widow has raised any question as to the propriety of this method and no ground appears to be presented by the trustee for doubt with respect thereto. There is, therefore, no occasion for instruction by the court on this point.

Settle decision and interlocutory judgment in accordance herewith; the judgment shall provide that objections to the accounts may be filed within twenty days after the service thereof with notice of entry.