[Civ. No. 22019. Second Dist., Div. Two. Jan. 23, 1957.]

FLORENCE VIDOR HEIFETZ, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION et al., Respondents.

Scudder & Forde and Guy Richards Crump for Appellant.

Freston & Files, Eugene D. Williams and Ralph E. Lewis for Respondents.

ASHBURN, J.—This case presents two controlling questions. ■ Does reserved power to revoke, wholly or in part, an *inter vivos* trust embrace an implied power to amend? ■ If yes, can the trust, though expressly declared irrevocable, be terminated by the process of eliminating beneficiaries through amendments until there are left only one or more who are *sui juris* and who join in a notice of revocation and a demand for delivery of the property? As applied to the facts at bar the authorities require an affirmative answer to each question.

On January 14, 1925, plaintiff, then named Florence Vidor, created a trust with Bank of Italy, the corporate predecessor of defendant Bank of America National Trust and Savings Association. The declaration of trust provides that the net income be paid to the trustor or her daughter, Suzanne Vidor (now Suzanne Vidor Adams), dependent upon certain contingencies of age and survivorship; Suzanne to take half of the corpus and accumulated income at the age of 25 years or at the death of her mother; the trust to terminate entirely on Suzanne's 35th birthday if the trustor be not then living, or upon her death if it occur after Suzanne reaches the age of 35. Upon such termination the entire trust is to go to Suzanne, if living, but if she be deceased then to her lawful

issue by right of representation; in the absence of such issue the estate to go to trustor's mother or her sister or to the children or grandchildren of the sister, depending upon certain specified contingencies; or, in a certain event, to the trustor's heirs at law exclusive of her husband.

Paragraph 2 of the declaration of trust specifically provides that the trustor may add to the corpus at any time, and paragraph 10 reserves the right to withdraw from the trust at any time any portion or all of the trust estate. Paragraph 9 reserves to the trustor "the right and option to cancel and revoke this trust in whole or in part at any time during her lifetime by the service of a notice in writing of such cancellation and revocation upon the trustee, such notice to be served as hereinafter provided, and immediately upon the expiration of thirty (30) days from the service of said notice, this trust shall forthwith cease and determine and the trustee shall immediately restore, repay, transfer, convey, assign and deliver to the trustor all of the trust estate and property, including principal and income, then held by it hereunder, or if such cancellation and revocation be only partial, such part of said trust estate and property as the trustor may elect to receive."

On December 28, 1927, the trustor amended the trust instrument to provide, among other things, that after her death the income should go to Suzanne, who on her 21st birthday should receive $25,000 of corpus and a like amount at the end of each five-year period; but it is further provided that the corpus in no event shall be reduced to less than $75,000, and "that the trust shall never be revoked as to property of this value during the continuance of the trust, but that the said Suzanne Vidor shall, during her lifetime, receive the income from the sum of Seventy-five Thousand Dollars ($75,-000), and in the event the payments, herein provided, of Twenty-five Thousand Dollars ($25,000), at each five year period should, during the lifetime of Suzanne Vidor reduce the trust to this amount, then such payments shall cease and terminate." It is also provided that the trust terminate upon the death of Suzanne if her mother be not then living, and that the remainder be distributed to different persons and in a different manner from that provided in the original declaration. The amendment concluded as follows: "In all other respects the trust agreement and the trusts therein created are hereby fully ratified and confirmed."

On December 31, 1928, another amendment was made by the trustor and accepted by the trustee. It expressly changed

paragraph 9 to read: "Anything else herein contained to the contrary notwithstanding, the Trustor hereby reserves, and she is hereby expressly given and granted the right and option to cancel and revoke this trust *in part* at any time during her lifetime by the service of a notice in writing of such cancellation and revocation upon the Trustee, such notice to be served, as hereinafter provided, and immediately upon the expiration of thirty (30) days from the service of said notice, this trust shall forthwith cease and determine as to such part of said trust estate and property as such partial termination shall designate.

"Said Trustor shall not, however, at any time, by such revocation, withdraw from the hands of the Trustee or from said trust estate any money or property which shall reduce the trust estate to a value of less than One Hundred Fifty Thousand Dollars ($15, 000.00) [sic], it being the intention of the Trustor herein to make said trust at this time and to continue during the lifetime of the Trustor *irrevocable by any act on her part as to money or property* held in said trust of a value of at least One Hundred Fifty Thousand Dollars ($150,000.00) . . . it being the intention of the Trustor at this time, and by this act and instrument, to create a portion of said trust estate in a value not to exceed One Hundred Fifty Thousand Dollars ($150,000.00), and to take and withdraw from herself any authority, hereinbefore contained in said Declaration of Trust, to reduce said trust estate to a sum less than said amount." (Emphasis added.) The document concludes with this: "In all other respects the trust agreement and the trusts therein created are hereby fully ratified and confirmed." It appears that there never has been as much as $150,000 in the trust, its value being about $143,000 at the time of trial.

The trustor having remarried, two children were born to her after the making of the 1928 amendment, namely, Josepha Heifetz and Robert Heifetz, who were aged 24 and 22 years, respectively, at the time of the trial. It is a fair inference that the addition of these children to her family was a motivating cause of the termination of the trust.

On May 15, 1953, plaintiff gave notice to the bank requesting termination of the trust and delivery to her of all trust property, pursuant to paragraphs 9 and 10 of the original trust agreement, stating that she had been advised by counsel that the amendments were invalid and that she repudiated the same. After the bank's refusal to comply plaintiff filed her

original complaint on September 3, 1953, based upon this notice and demand. It sought a judicial determination of revocation of the trust and delivery of all assets to plaintiff. The bank filed an answer.

Subsequently, on January 7, 1954, plaintiff served another notice on the bank (without waiving any rights or prior demand) to revoke the trust in part, i.e., all provisions which provide for payment or distribution to anyone other than herself and daughter. The pertinent language is: "I hereby revoke each and all of the provisions in said Declaration of Trust, and in each amendment, or purported amendment thereto, insofar as the same does, or purports to, provide for the payment or distribution of any of the income or corpus of the trust estate to anyone other than myself and my daughter, Suzanne Vidor (now Suzanne Vidor Adams)."

Two days later, on January 9, 1954, she served a further notice (without prejudice to her former purported cancellation and revocation) revoking the original trust and the two amendments in their entirety and demanding delivery of the trust corpus. Her daughter evidenced her consent in writing. Because of the pending litigation, the bank refused to comply. Thereupon the pleadings were appropriately amended and the court tried the case upon the basis of all the foregoing documents.

Plaintiff's claim of termination was and is resisted not only by the trustee but also by contingent remaindermen, some of whom are infants and others are unborn, both of the latter classes appearing by guardians ad litem.

The trial court held that under the original agreement giving trustor the power to revoke or cancel in whole or in part, she could amend the trust, and the 1927 and 1928 amendments are valid; also that she had the right to change the beneficiaries as she did by the 1927 amendment; that paragraph 10 was impliedly revoked by the 1928 amendment; that by reason of that amendment to paragraph 9, the trust is irrevocable as to $150,000 and she cannot reduce the estate to a sum less than that amount, nor can she cancel, revoke, amend or change the beneficiaries of said trust insofar as the same shall affect any of the assets to the extent of $150,000; that the notices of revocation are invalid and ineffective and the trust has not terminated. The judgment contains the following: " [T]he Court hereby adjudges and decrees that she did thereby render said trust irrevocable as between herself, the trustee and all of the beneficiaries thereof to the extent of

$150,000.00 of the value of the assets of the corpus of said trust; plaintiff retaining the right to cancel, revoke or amend said trust as to any part of the assets thereof in excess of $150,000.00." Also: "That the plaintiff does not have the power to cancel, revoke or amend or to change the beneficiaries of said trust insofar as the same shall affect any of the assets of said trust to the extent of $150,000.00."

Counsel for all parties expressly agree that the power to revoke in whole or in part, as expressed in the original declaration, includes the power to amend, and that the 1927 and 1928 amendments are valid. ▨ But though that agreement upon the law is persuasive, it does not relieve this court of the duty to determine the question, for the agreement of the parties upon the law of the case does not bind a court of review (*Desny* v. *Wilder*, 46 Cal.2d 715, 729 [299 P.2d 257]). The basic question at bar is whether a reserved power of total or partial revocation includes a right to amend.

The cases are few, and while their general tenor and that of the text books is in favor of the existence of such implied power (*Long* v. *Cleveland Trust Co.* (Ohio Common Pleas), 97 N.E.2d 107, 108; *Chase Nat. Bank of City of New York* v. *Mackenzie* (Special Term), 192 Misc. 172 [76 N.Y.S.2d 19, 22-23]; 3 Scott on Trusts, § 331.1, p, 1811; 4 Bogert on Trusts and Trustees, § 996, at p. 463; Stevenson on Drafting Wills and Trust Agreements, § 15.3, p. 322), the correct appraisal of the state of the law seems to be that of 1 Nossaman on Trust Administration and Taxation, section 306, page 289: "Does power to revoke include power to amend? It has been held that it does not where the only power reserved is to revoke the trust in its entirety. Where the terms of the trust are less explicit, the answer is more doubtful. The Restatement (§ 331g) is favorable to the view that the power to amend is included in the power to revoke. The authorities upon the point do not seem to be numerous. As a practical proposition, the principle referred to, if it exists, is too uncertain, too dependent on language furnishing only disputable evidence of intent, to provide a safe working rule." The Restatement of Trusts, section 331, comment g, on page 1001, says: "It is a question of interpretation to be determined in view of the language used and all the circumstances whether a power to revoke the trust includes a power to modify it. Ordinarily a general power to revoke the trust will be interpreted as authorizing the settlor not only to revoke the trust in part by withdrawing a part of the trust property from the trust

(see § 330, comment n), but also to modify the terms of the trust, and it will be unnecessary for the settlor first to revoke the trust and then to create a new trust. If, however, the effect of the modification is to add to or vary the duties of the trustee, this is a ground for permitting the trustee to resign as trustee (see § 106). If the settlor reserves power to revoke the trust 'as an entirety,' he cannot modify the trust, although he can revoke the trust and if he so desires create a new trust.''

 In the instant case the declaration specifically declares the right of the trustor to withdraw assets and thus reduce the amount of corpus (par. 10). The same thought is repeated in the revocation clause (par. 9). But if that were all that was intended there would have been no occasion for having both paragraphs as 10 would be all-sufficient. The preliminary language of 9 is: "Anything else herein contained to the contrary notwithstanding, the trustor reserves, and she is hereby expressly given and granted the right and option to cancel and revoke this trust in whole or in part at any time during her lifetime by the service of a notice in writing of such cancellation and revocation upon the trustee.'' This is not necessarily limited by the language which immediately follows and relates to redelivery of assets covered by a revocation; it is directed primarily to the consequence of a total revocation and, when speaking of a partial one, provides for delivery of "such part of said trust estate and property as the trustor may elect to receive.'' If perchance, the trustor revokes some portion of the trust (e.g., a gift to her daughter), that would not entail any redelivery of property nor evidence any election of the trustor to receive any, but it would be a partial revocation nevertheless. Nor is the quoted passage limited to a total revocation, as was the case in *National Newark & Essex Banking Co.* v. *Rosahl*, 97 N.J. Eq. 74 [128 A. 586, 587]. The reasonable construction of the provision under consideration is that the power extends to something more than withdrawal of assets, to modifications such as change of beneficiaries or scheme of distribution. We agree with counsel that the trial judge correctly held the amendments of 1927 and 1928 to be valid,—this because of an implied power embraced within the reservation of power to revoke in whole or in part.

Accepting this as the basic rule it appears that the trust was made irrevocable to the extent of $75,000 in 1927, and to the extent of $150,000 in 1928. In each instance the power to revoke in part was retained.

In considering the effect of the 1928 amendment (around which the real controversy at bar revolves) it is to be remembered that there is nothing in the record to suggest that the trust was based upon any consideration moving from anyone to Mrs. Vidor, or that it was not wholly gratuitous and in the nature of a settlement upon the issue of the trustor. By its terms she conferred certain future interests upon them, but those interests were upon condition subsequent and subject to being defeated upon the trustor exercising her reserved right to revoke wholly or in part. ■ The nature and extent of the rights retained by the trustor are to measured by the four corners of the instrument. Any right of revocation or amendment found therein can be exercised lawfully by her without regard to the effect upon the rights of remaindermen, for the simple reason that she owes them no duty to refrain from exercising any reserved right.

We find no basis for a holding that the trust was frozen with respect to the $150,000 corpus so that no change could be made in the identity or respective shares of beneficiaries. The language of the 1928 amendment definitely attaches irrevocability to corpus of a value of $150,000 or less, but does not mention any other restriction upon the right of the trustor to deal with the trust by way of amendment. On the contrary the trustor concludes the matter with a declaration of "it being the intention of the Trustor at this time, and by this act and instrument, to create a portion of said trust estate in a value not to exceed One Hundred Fifty Thousand Dollars ($150,000.00), and to take and withdraw from herself any authority, hereinbefore contained in said Declaration of Trust, to reduce said trust estate to a sum less than said amount." Plainly no existing power or authority was intended to be withdrawn other than that of a right to reduce the amount of corpus to less than $150,000. At the time of this amendment the trust property had never reached a value of $150,000, and the language used in amended paragraph 9 actually related to the entire trust then existing. It is a fair inference that the expressed power to revoke in part when contrasted with the inhibition upon withdrawal of assets which would reduce the trust to less than $150,000 was intended to refer to other aspects of the trust, the most obvious of which would be identity of beneficiaries and scheme of distribution. It is conceded by respondent that that power to change the terms of the trust was reserved as to any property exceeding $150,000 in value, and we perceive no substantial

basis for holding that it was not also reserved as to the $150,000 of assets, the then existing trust. So the trustor had the right in January, 1954, to change the trust to the extent of making herself and her daughter the sole beneficiaries, thus eliminating all remaindermen, vested or contingent, born or unborn.

After this was accomplished trustor and her daughter, as sole beneficiaries, joined in a notice to the trustee of revocation *in toto* and demand for the assets. The court held this could not succeed as it would accomplish by indirection the result forbidden by the irrevocability clause covering the $150,000. The authorities preponderate to the contrary. (*Manice* v. *Howard Sav. Institution*, 30 N.J.Super. 267 [104 A.2d 74, 75-76] ; *Petition of Tucker* (Special Term), 70 N.Y.S. 2d 626, 627 ; *Faulkner* v. *Irving Trust Co.*, 231 App.Div. 87 [246 N.Y.S. 313, 314] ; *Meyer* v. *Bank of Manhattan Trust Co.*, 232 App.Div. 228 [249 N.Y.S. 640, 643-644] ; *Schellentrager* v. *Tradesmens Nat. Bank & Trust Co.*, 370 Pa. 501 [88 A.2d 773, 775] ; *Sayers* v. *Baker* (Tex. Court of Civil Appeals), 171 S.W.2d 547, 551; *Guaranty Trust Co. of New York* v. *Howe* (Special Term), 193 Misc. 640 [86 N.Y.S.2d 808, 812] ; annotation in 38 A.L.R. 941, 965; 91 A.L.R. 102, 114; 131 A.L.R. 457, 469; "*Revoking a Trust*" by Prof. Scott, 65 Harv.L. Rev. 617; 3 Scott on Trusts, § 338, pp. 1860-1861.)

█ The matter is thus stated in *Manice* v. *Howard Sav. Institution* (N.J.Super.), *supra*, 104 A.2d 74, 75: "Where the settlor's power to modify a trust is unrestricted, he can so modify it as to exclude all the beneficiaries, and make himself the sole beneficiary, and, therefore, an unrestricted power to modify includes a power to revoke the trust. Scott on Trusts, § 331.2, p. 1812; Restatement, Trusts, § 331h, p. 1002.

"Once it is determined that the settlor is the sole beneficiary, it is generally held that he can terminate the trust and compel the trustee to reconvey the trust property to him, even though the agreement expressly provides that he should have no power to revoke it and even though the purposes of the trust have not been fully accomplished. Since no one but the settlor has any beneficial interest in the trust, if he is not under a legal disability, he should be permitted to do with it as he wills, regardless of the prudence of its creation.

"In interpreting and construing the trust instrument in the instant case, it should be considered that the property involved was the settlor's own and that by virtue of the expressed reserved power to change the beneficiaries, no one acquired

any right under the instrument, except that of the defendant to administer the trust in accordance with its terms."

The cited authorities are in consonance with the policy of this state which, as declared by the Supreme Court, favors free alienability of property and the termination of trusts upon application of all beneficiaries when they are *sui juris* and where no subversion of the expressed wishes of the trustor is apparent. In this state section 2280, Civil Code, provided at the time this trust was created: "A trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, *except by the consent of all the beneficiaries*, unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued." (Emphasis added.) When amended in 1931 the new section concluded as follows: "Trusts created prior to the date when this act shall become a law shall not be affected hereby." Appellant's right to a termination with consent of the only other beneficiary is sustained not only by the code section, but also by *Eakle* v. *Ingram*, 142 Cal. 15, 17 [75 P. 566, 100 Am.St.Rep. 99], and *Fletcher* v. *Los Angeles Trust etc. Bank*, 182 Cal. 177, 179 [187 P. 425]. The rule was recognized in *Bixby* v. *California Trust Co.*, 33 Cal.2d 495, 497 [202 P.2d 1018]. Of course, cases dealing with termination contrary to the supposed desire of the trustor are not pertinent here, for the application is made by the trustor herself. Indeed, respondents say in their brief: "The respondent trustee has not, at any point in this case, taken the position that, if *all* parties can and do consent to the termination of a trust that such termination would not be proper."

The argument that the trustor should not be thus enabled to accomplish indirectly what she could not do directly, does not induce a different conclusion. The trust, in its various mutations, was in the nature of a gift to the named beneficiaries, subject to a condition subsequent, a change of mind of the trustor resulting in an amendment revoking the share of any one or more of them. When the trustor reached the point of declaring the trust irrevocable to the extent of $150,000 and retained power to partially revoke in other respects, she reserved thereby the legal right to change her mind again, and to make her daughter the sole beneficiary or to place her daughter and herself in that category. That point having been reached she owed no further duty to conditional beneficiaries previously named, and there was no legal impediment to her terminating the trust with the consent of the daughter.

The judgment is reversed with instructions to enter judgment in accordance with paragraphs first and second of the prayer of the amended and supplemental complaint.[1]

Moore, P. J., and Fox, J., concurred.

The petition of respondent Bank of America for a hearing by the Supreme Court was denied March 20, 1957.

[1]Said paragraphs read: "*FIRST*: That said trust evidenced by the declaration of trust dated January 14, 1925, be adjudged and decreed canceled, revoked and terminated;

"*SECOND*: That defendant Bank of America National Trust and Savings Association account to plaintiff for all assets including accrued income in its possession or control, and deliver and pay over the same to plaintiff in accordance with the provisions of paragraphs 9 and 10 of said declaration of trust."