[No. D004069. Fourth Dist., Div. One. Apr. 24, 1987.]

Estate of ESTHER A. LINDSTROM, Deceased.
HOWARD K. HALL, Petitioner and Respondent, v.
OWEN WAYNE HOPKINS et al., Contestants and Appellants.

Estate of ESTHER A. LINDSTROM, Deceased.
OWEN WAYNE HOPKINS et al., Petitioners and Appellants, v.
SAN DIEGO TRUST & SAVINGS BANK, as Trustee, etc., Claimant
and Respondent.

[Opinion certified for partial publication.[1]]

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of parts I and III-V.

COUNSEL

Barwick & Knowlton, Robert W. Knowlton and David L. Bain for Petitioners and Appellants and Contestants and Appellants.

Alden J. Fulkerson for Petitioner and Respondent.

No appearance for Claimant and Respondent.

**O**PINION

**TODD, J.**—We hold here that a will cannot modify or revoke an inter vivos trust absent specific conformance with the amendment/revocation provisions of the trust.

This appeal arises out of a consolidated court trial concerning an inter vivos trust established by Esther A. Lindstrom and Mrs. Lindstrom's estate. Owen Wayne Hopkins, Martha Hopkins, Deanna Mikulas, Edith Kendall and Stagecoach Health Club, Inc. (hereafter referred to as Appellants-Trust) appeal the trust proceeding and Owen Wayne Hopkins and Martha Hopkins (hereafter referred to as Appellants-Estate) appeal the estate proceeding.

Respondent Howard Hall filed a petition for probate of Mrs. Lindstrom's last will dated February 27, 1984. Appellants-Estate filed a contest. Appellants-Trust were named beneficiaries under Mrs. Lindstrom's inter vivos trust dated February 23, 1982. They filed a petition for instructions to the trustee under Probate Code section 1138.1, subdivision (a)(4).[2] The petition sought distribution of the trust assets in accordance with the provisions of the trust. The trial court declared their beneficial shares forfeited pursuant to an in terrorem clause in Mrs. Lindstrom's will. The trial court also admitted to probate the February 27, 1984 will. Both sets of appellants appeal.

## FACTS

On February 23, 1982, Esther Lindstrom, a widow with no children, executed (1) a revocable inter vivos trust naming Crocker National Bank as trustee and (2) a will with a standard "pour over" provision giving all of her estate (not already in the trust) to the trustee of the trust. Mrs. Lindstrom was the lifetime beneficiary of all income and principal of the trust. The trust named the following remaindermen beneficiaries: "Owen Wayne Hopkins and Martha Hopkins, equally, or to the survivor, all real property and mining interests." The residue was divided as follows:

"Owen Wayne Hopkins and Martha Hopkins, equally, or to the survivor, Seventy (70%) per cent;

"Margaret Keller, Three and One-Third (3-1/3%) per cent;

"Edith Kendall, Ten (10%) per cent;

---

[2]All statutory references are to the Probate Code unless otherwise specified.

"Deanna Mikulas, Ten (10%) per cent;

"Lucille Hoffman, Three and One-Third (3-1/3%) per cent;

"Stagecoach Health Club, Inc., Three and One-Third (3- 1/3%) per cent."

At the time of execution of these documents, Mrs. Lindstrom lived with the Hopkinses; they had known her for 14 years. In September 1982, Mrs. Lindstrom had a falling out with the Hopkinses and moved to a house she owned in La Mesa. On December 22, 1982, Mrs. Lindstrom wrote Crocker Bank that she wanted to change her trustee to San Diego Trust & Savings Bank. On January 21, 1983, two Crocker trust officers visited Mrs. Linds- trom at her La Mesa house, and after the meeting, Mrs. Lindstrom signed a letter rescinding her December 22 letter.

While living at the La Mesa house, Mrs. Lindstrom was frequently visited by Howard Hall and his mother, Omega Ceccacci. Ceccacci owned a house in Dulzura located next to a cottage owned by Mrs. Lindstrom. In April 1983, Mrs. Lindstrom moved from her La Mesa house to her Dulzura cottage.

On June 29, 1983, Mrs. Lindstrom again wrote Crocker Bank to change her trustee, and subsequently Crocker Bank sued Mrs. Lindstrom. That lawsuit, in part, raised the issue of whether Mrs. Lindstrom had the mental capacity to change trustees.

In November 1983, the superior court ruled that in December 1982 and July 1983, Mrs. Lindstrom had the capacity to contract, and, therefore, the change in trustee to San Diego Trust & Savings Bank effectuated by the June 29 letter was valid. The ruling was not appealed.

During the pendency of the litigation with Crocker Bank, Mrs. Lindstrom executed the first of two codicils to her will and the first of three amendments to her inter vivos trust.

On February 27, 1984, Mrs. Lindstrom executed a new will that revoked all former wills. Mrs. Lindstrom died September 15, 1984.

None of the three trust amendments was delivered to the trustee during Mrs. Lindstrom's lifetime as required by the trust instrument. Accordingly, the trial court in the instant case ruled all three trust amendments were invalid. No one contests that ruling. The trial court also found the February 23, 1982, trust document to be the valid inter vivos trust of Esther Linds- trom. That ruling, too, is uncontested.

Little else in this acrimonious consolidated action has been uncontested. The record of the pretrial manuvering consists of five volumes—some 1,300 pages—and includes two requests for removal of attorneys for conflicts of interest, as well as an almost unheard-of attempt by a terminated law firm associate who worked on the case for a while to place a lien for claimed attorney fees on the decree of distribution rendered in the case.

The trial court admitted the February 23, 1982, will into evidence and proceeded to test the validity of the first codicil. After six days of testimony in which the evidence about Mrs. Lindstrom's testamentary capacity was limited to a six-month period—the previous three months and the following three months—surrounding the August 17, 1983, execution date, the trial court ruled the first codicil was valid.

The trial court also ruled that an attack on the trust was an attack or contest of the will and triggered the in terrorem clause of the will. The court ruled that both sets of appellants were covered under the in terrorem clause.

When the trial reconvened the following month, Appellants-Estate withdrew their contest of the second codicil and of the last will dated February 27, 1984. The trial court then admitted to probate the February 27, 1984, will.

The trial court ordered the trustee to hold in trust Mrs. Lindstrom's trust assets and estate assets and to divide them in two parts: (a) Alaska property,[3] and (b) California property. Pursuant to a stipulation presented to it, the court instructed the trustee to distribute the Alaska property in equal shares to Mrs. Lindstrom's seven heirs-at-law and to distribute the California property to the five devisees in Mrs. Lindstrom's last will of February 27, 1984, and the sole trust remainderman who had not joined any contest.

## DISCUSSION

Appellants appeal on the grounds that the trial court made the following errors: (a) failed to issue statements of decision; (b) exceeded its jurisdiction in interpreting the in terrorem clause and other provisions of the will; (c) improperly ruled that Mrs. Lindstrom was not subject to undue influence when she executed her codicils and last will; (d) improperly participated in settlement discussions; and (e) improperly expanded the application of the in terrorem clause to cover an inter vivos trust.

---

[3]Mrs. Lindstrom's trust did not include real property and mining interests she owned in Alaska. Her February 27, 1984, will specifically excluded any disposition of the Alaska property and interests.

For the reasons which follow, we have concluded only the final contention has merit. Accordingly, we will first take up the issues surrounding the in terrorem clause.

I*

. . . . . . . . . . . . . . . . . . .

II

Mrs. Lindstrom's will dated February 23, 1982, contained the following provision: "If any devisee, legatee, or beneficiary under this Will, or any legal heir of mine, or person claiming under any of them, shall contest this Will, or attack or seek to impair or invalidate any of its provisions, or conspire with or voluntarily assist anyone attempting to do any of those things, in that event I specifically disinherit each such person and all legacies, bequests, devises and interests given under this Will to that person shall be forfeited and shall augment proportionately the shares of my estate going under this Will." Since the first codicil and the second codicil republished the February 23, 1982, will, the above in terrorem clause was incorporated in the codicils.[5]

■ An in terrorem clause creates a condition upon bequests provided in a will which is enforced in California (see *Estate of Basore* (1971) 19 Cal.App.3d 623, 630 [96 Cal.Rptr. 874]). Whether there has been a contest within the meaning of a particular no-contest clause depends upon the particular case and the language used. (*Estate of Kazian* (1976) 59 Cal.App.3d 797, 802-803 [130 Cal.Rptr. 908]; *Estate of Watson* (1986) 177 Cal.App.3d 569, 572 [223 Cal.Rptr. 14].) Determination of whether a prohibited contest has occurred must be made on a case-by-case basis. (*Ibid.*)

Here, the trial court ruled appellants' beneficial shares under Mrs. Lindstrom's inter vivos trust were forfeited under the in terrorem clause of her will. In making this ruling, the trial court relied on three preliminary conclusions it had reached: (1) that Mrs. Lindstrom's will consisted of her inter vivos trust *and* her last will and testament; (2) that the in terrorem clause of her will, by virtue of its wording, applied to the inter vivos trust as well as to the will; and (3) that the will effectively amended the inter vivos trust. Each of these bases was flawed, leading the trial court to an erroneous result in this case. Much like a house of cards or a house built on a foundation of sand rather than rock, neither the entire structure nor the individual components can support the weight of the unsturdy premises. We will take up the faulty premises one by one.

---

*See footnote 1, *ante,* page 375.
[5]Mrs. Lindstrom's will dated February 27, 1984, contained an identically worded provision.

## A.

██ The trial court's first premise—that the inter vivos trust was part of her will—appears to be based on evidence of Mrs. Lindstrom's apparent state of mind in executing the various documents. Attorney Richard Schwering, who prepared Mrs. Lindstrom's first codicil, and Stephen Dimeff, the attorney who succeeded him in representing Mrs. Lindstrom, testified that she viewed her will *together* with her trust as her testamentary package. The attorneys testified that when she used the word "will" she was referring to both her will and her trust. In Mrs. Lindstrom's own testimony during the earlier litigation with Crocker Bank,[6] she in effect included the trust as an integral part of her will.

In *Estate of Russell* (1968) 69 Cal.2d 200, 205 [70 Cal.Rtpr. 561, 444 P.2d 353], our Supreme Court pointed out that the cardinal rule in the construction of a will is that the intention of the testator when clearly expressed in the will must be given effect. While the testimony of Attorneys Schwering and Dimeff provides substantial evidence to support the trial court's conclusion Mrs. Lindstrom considered the last will and testament *and* the trust as her will, this conclusion by itself is not dispositive of the issue. Not only is her intention to treat the trust as part of her will not clearly expressed in the will, but it is questionable that such an intention would be consistent with established legal principles given the language of the documents. ██ And, of course, if Mrs. Lindstrom's intention is inconsistent with legal rules or was not manifested in accordance with them, it cannot be given effect.[7]

---

[6] By order of this court on November 3, 1986, respondent's motion to augment the record on appeal pursuant to California Rules of Court, rule 12(a), was granted. Thus, copies of the reporter's transcript of the Crocker-Lindstrom litigation (Sup. Ct. Nos. 132683, 132687) are part of the record on appeal in the instant case.

[7] We are in no way disputing the trial court's findings concerning Mrs. Lindstrom's intent. There is substantial evidence to support them. But in this section, as in sections B and C of part II of this opinion, we find them to be factual determinations that are extraneous and irrelevant to the interpretation of the documents at issue. Consequently, they have no bearing on the proper construction of the will and the trust, which is a matter of law.

The interpretation of a written instrument is essentially a judicial function to be exercised according to the generally accepted canons of interpretation. As to the authority of an appellate court to review a written instrument that is susceptible of more than one interpretation, our Supreme Court resolved the issue in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839]. The *Parsons* court held that when there is no conflict in the extrinsic evidence, the reviewing court "must make an independent determination of the meaning . . . ." (*Id.* at p. 866; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 295, p. 306.) Here, there was no conflicting evidence bearing on issues concerning the construction of the documents.

The rationale for the *Parsons* rule was expressed in *Estate* of *Shannon* (1965) 231 Cal.App.2d 886, 890-891 [42 Cal.Rptr. 278]: "[W]here only the interpretation of written instruments is concerned, unaffected by extrinsic evidence, is not an appellate court, after

 Regardless of Mrs. Lindstrom's belief that her February 23, 1982, trust was part of her will, the document was a separate instrument that stood on its own. When Mrs. Lindstrom set up the trust on February 23, 1982, she gave up her ownership or alienability rights of the designated corpus of the trust, i.e., the corpus was no longer something that she could give away or devise in her will.[8] Mrs. Lindstrom's inter vivos trust was, by its terms, a revocable trust, and, hence, during her lifetime she could have revoked the trust so that she regained her ownership of the corpus or amended the trust so that the beneficiaries would change, provided she carried out the appropriate actions outlined in the revocation/amendment provision of the trust instrument. Regardless of whether she wanted to or intended to, Mrs. Lindstrom did not carry out the prescribed actions.

## B.

 The trial court ruled the in terrorem clause applied to Mrs. Lindstrom's will *and* her inter vivos trust even though the language of the clause only referred to "this will" and not to any other document. Apparently, the trial court gave great weight to the language in the clause that in the event of a contest Mrs. Lindstrom would "specifically disinherit *each such person* and all legacies, bequests, devises and interests given under this Will to that person shall be forfeited and shall augment proportionately the shares of my estate going under this Will." (Italics added.) In a colloquy with appellants' counsel, the trial court remarked that the in terrorem clause contained " 'each such person,' which means more than one. Therefore, it means more than Crocker National Bank (the only entity taking under the will). And that language, to be given any meaning at all, has to be used in conjunction with the trust . . . ." While the trial court found the phrase "each such person" controlling, we do not. Of upmost importance for purposes of construing the will, the clause does not—either directly or indirectly—refer to the trust; it refers only to "this will." We find that language of the clause to be controlling.

A rule of strict construction of an in terrorem clause is established in this state and should be followed. An in terrorem clause in a will "is to be strictly

---

studying the briefs on appeal, listening to the arguments of counsel, and thereafter engaging in a full discussion of the problem among the justices, in a more adequately informed position than is the trial judge and therefore better able to interpret the intent of the parties? . . . We conclude that in any case where extrinsic evidence is completely lacking or the quantum or quality thereof does not in reason place the trial judge in a better position to form an accurate interpretation of writings, or in other words, where interpretation is essentially a question of law rather than of fact, an appellate court is not bound by the determination of the trial court."

[8]Mrs. Lindstrom in effect entered into a contract with the trustee and both parties agreed to the terms and conditions of the trust document. Neither the trial court nor this court can alter or amend that document.

construed . . . ." (*In re Kitchen* (1923) 192 Cal. 384, 389 [220 P. 301].) An in terrorem clause is to be given " 'no wider scope . . . than is plainly required. It does not require the court to put a strained or overtechnical construction upon the language employed . . . .' " (*Estate of Fuller* (1956) 143 Cal.App.2d 820, 824 [300 P.2d 342]; *Estate of Goyette* (1968) 258 Cal.App.2d 768, 772 [66 Cal.Rptr. 103].)

"Each such person" does not necessarily mean more than one. It logically refers to whoever contested the will. Given the entire language of the clause, that is the proper interpretation. It was error to expand the language to include the trust.[9]

## C.

The third paragraph of Mrs. Lindstrom's will dated February 27, 1984, reads in pertinent part:

"THIRD: I give my property, real and personal, to SAN DIEGO TRUST AND SAVINGS BANK, TRUSTEE under my Declaration of Trust, to be held, administered and distributed as directed below: [¶] My Trustee is to divide my trust estate into five (5) equal shares and distribute:

"One-Fifth (1/5) of my trust estate to HOWARD K. HALL;

"One-Fifth (1/5) of my trust estate to OMEGA A. CECCACCI;

"One-Fifth (1/5) of my trust estate to MARGUERITE GURSCHE and PAUL GURSCHE equally, or to the survivor;

---

[9]The trial court here found Appellants-Trust participated in a will contest by filing the section 1138.1, subdivision (a)(4) petition, which, among other things, raised the issue of Mrs. Lindstrom's competency. In keeping with the general rules of construction of wills, technical terms used in an in terrorem clause of an attorney-prepared will are, absent evidence to the contrary, given their technical meaning. (*Lobb* v. *Brown* (1929) 208 Cal. 476, 484-485, 491-492 [281 P. 1010].) Thus, a reference to "contest of will" in the clause has been deemed to refer to a proceeding raising an issue delineated in section 371, i.e.: "Any issue of fact involving the competency of the decedent to make a last will and testament, the freedom of the decedent at the time of the execution of the will from duress, menace, fraud, or undue influence, the due execution and attestation of the will, or any other question substantially affecting the validity of the will . . . ." (§ 371; *Estate of Hite* (1909) 155 Cal. 436, 441 [101 P. 443]; *Estate of Moore* (1919) 180 Cal. 570, 571-575 [182 P. 285]; *Estate of Mathie* (1944) 64 Cal.App.2d 767, 776-777 [149 P.2d 485]; *Estate of Basore, supra,* 19 Cal.App.3d 623, 630.) But other cases have excluded proceedings to obtain property "based on a source of right independent of the will." (*Estate of Black* (1984) 160 Cal.App.3d 582 [206 Cal.Rptr. 663]; *Estate of Watson, supra,* 177 Cal.App.3d 569.) We find it unnecessary to rule on whether the section 1138.1, subdivision (a)(4) petition constituted a will contest based on our other conclusions on the trial court's ruling on the in terrorem clause.

"One-Fifth (1/5) of my trust estate to MARGUERITE KELLER and EDITH KENDALL equally, or to the survivor; and

"One-Fifth (1/5) of my trust estate to RYAN TROTT."

In effect, the trial court's ruling on the in terrorem clause and the subsequent judgment it rendered[10] gave Mrs. Lindstrom the right to change her trust by will—in direct contradiction of the trust and established legal principles. Again, the trial court apparently was attempting to effectuate its perception of Mrs. Lindstrom's desires and her intention in executing the February 27, 1984, will.

What the trial court missed in its analysis is considering Mrs. Lindstrom's intention when she executed the trust document on February 23, 1982, and how she manifested that intention.

Article III, entitled *Rights Reserved By Trustor,* of the February 23, 1982, trust reads in pertinent part: "This trust may be amended, altered or revoked at any time by the Trustor, in whole or in part by written instrument filed with the Trustee upon paying all sums due the Trustee and indemnifying the Trustee in a manner satisfactory to the Trustee against liability lawfully incurred in the administration of this trust."

Two things stand out about article III of the trust: (1) it does not provide for revocation, amendment or alteration by will; and (2) it is not ambiguous.

■ It would seem immaterial whether or not Mrs. Lindstrom intended by her will to exercise the power of revocation and/or amendment.[11] It is the general rule of trust law that: "If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances. . . . [¶] If the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will." (Rest.2d Trusts, § 330, com. j, p. 139.)

---

[10]The judgment of the court divided the corpus of the trust among the five named beneficiaries of the February 27, 1984, will and a trust beneficiary who did not contest the will or any other document.

[11]For purposes of this opinion, revocation and amendment are fungible. "The unrestricted power to revoke implies a power to amend without revoking; i.e., it is unnecessary for the trustor to take the circuitous steps of complete revocation and creation of a new trust with the desired changes." (7 Witkin, Summary of Cal. Law (8th ed. 1974) § 116, p. 5473; see also *Heifetz* v. *Bank of America* (1957) 147 Cal.App.2d 776 [305 P.2d 979, 62 A.L.R.2d 1403] and Rest.2d Trusts, *supra,* § 331, com. g.)

Along with the vast majority of jurisdictions, California followed this rule in *Rosenauer* v. *Title Ins. & Trust Co.* (1973) 30 Cal.App.3d 300 [106 Cal.Rptr. 321, 81 A.L.R.3d 953]. In *Rosenauer,* the decedent had established a revocable inter vivos trust with Title Insurance & Trust Company as trustee. The *Rosenauer* trust document contained the following provision: " 'The trustor shall have the right at any time during her lifetime to amend any of the provisions of this Trust Agreement, or of any amendment thereto by an agreement in writing executed by the Trustor and the Trustee, and to revoke this Trust in whole or in part by an instrument in writing executed by the Trustor and delivered to the Trustee. . . .' " (*Id.* at p. 301, italics omitted.)

Subsequently, the decedent executed a will that provided: " 'This will revokes the Revocable Trust Agreement dated April 27, 1965 Number PP-15545 between myself as trustor, and Title Insurance Company and Trust Company, as the trustee.' " (*Id.* at p. 302.) Neither the will nor any other writing purporting to be a revocation of the trust was delivered to the trustee during the lifetime of the trustor. The plaintiff contended decedent's will revoked the trust, but the trial court sustained a demurrer and a judgment of dismissal followed.

The Court of Appeal affirmed, citing the Restatement and numerous cases from other jurisdictions.[12] The appellate court ruled that the decedent's "plainly expressed preference for a mode of revocation" was necessary to effectuate a revocation.[13] (*Id.* at p. 304.)

 Similarly in the instant case, Mrs. Lindstrom could only revoke the trust if she did so in the manner specifically set out in the trust document. She had no power to revoke the trust by will or in any manner except that specified. Any intention to revoke or amend, acquired by Mrs. Lindstrom after the execution of the trust agreement was executed on February 23, 1982, was insufficient unless her intent was communicated in writing to the trustee. Since no such writing was filed with the trustee, the trust was not revoked or amended.

---

[12]*Leahy* v. *Old Colony Trust Co.* (1950) 326 Mass. 49 [93 N.E.2d 238]; *National Shawmut Bank* v. *Joy* (1944) 315 Mass. 457 [53 N.E.2d 113]; *Kelley* v. *Snow* (1904) 185 Mass. 288 [70 N.E. 89]; *Stone* v. *Hackett* (1858) 12 Gray (78 Mass.) 227; *In re Dickerson* (1887) 115 Pa. 198 [8 A. 64, 69]; *In re Shapley's Deed of Trust* (1946) 353 Pa. 499 [46 A.2d 227, 164 A.L.R. 877]; *Chase National Bank* v. *Tomagno* (1939) 172 Misc. 63 [14 N.Y.S.2d 759]; *Mayer* v. *Tucker* (1928) 102 N.J.Eq. 524 [141 A. 799]; *Cohn* v. *Central Natl. Bank* (1950) 191 Va. 12 [60 S.E.2d 30]; see also 4 Bogert on Trusts and Trustees, § 996; 54 Am.Jur., Trusts, § 77.)

[13]*In Hibernia Bk.* v. *Wells Fargo Bank* (1977) 66 Cal.App.3d 399 [136 Cal.Rptr. 60], the court, in ruling upon the procedure to be followed in amending or revoking a trust, cited with approval *Rosenauer* and the principle set forth in Restatement Second of Trusts section 330, comment j.

Respondent's argument made in his supplemental brief after oral argument that California law permits revocation or modification of an inter vivos trust by a will is without merit. Respondent misapplies Civil Code section 1385.1, which deals with the exercise of a power of appointment. A power of appointment is defined generally "as a power or authority given to a person to dispose of property, or an interest therein, which is vested in a person other than the donee of the power." (*Estate of Conroy* (1977) 67 Cal.App.3d 734, 738 [136 Cal.Rptr. 807].) The instant case has nothing to do with powers of appointment. Nowhere in any document—including, most importantly, the trust document—does Mrs. Lindstrom establish or reserve a power of appointment.

Respondent mistakenly relies on *Rosenauer* v. *Title Ins. & Trust Co.,* *supra,* 30 Cal.App.3d 300, in which the decedent expressly reserved a power of appointment in addition to specifying a required mode of revocation and modification. Mrs. Lindstrom did not reserve any power of appointment in her trust. Respondent has not supplied any authority, nor do we know of any, that would support the proposition that a power of appointment can be implied. In the absence of any authority, we refuse to do so. Hence, we find respondent's suggestion that Civil Code section 1385.1[14] permits Mrs. Lindstrom's February 27, 1984, will to amend her trust through the exercise of a nonexistent power of appointment to be a non sequitur. Moreover, assuming arguendo that reservation of a power of appointment can be implied, Mrs. Lindstrom did not effectively exercise any such power in her will under Civil Code section 1386.2.[15]

We also reject the contention in respondent's supplemental brief that the filing of Mrs. Lindstrom's will with the trustee after her death would be sufficient to revoke or amend the trust. Respondent points to article V, paragraph 8 of the trust document, which provides: "8. All rights granted to any person by any provision of this trust may be exercised by such person at any time *during his or her lifetime* and competency, *unless otherwise specifically provided herein*; that each such person is competent unless he or she shall have been declared incompetent by a court having jurisdiction to determine such incompetency, and until a duly certified or authenticated copy of deter-

---

[14]Civil Code section 1385.1 provides: "(a) Except as otherwise provided in this title, if the creating instrument specifies requirements as to the manner, time, and conditions of the exercise of a power of appointment, the power can be exercised only by complying with those requirements. [¶] (b) Unless expressly prohibited by the creating instrument, a power stated to be exercisable by an inter vivos instrument is also exercisable by a written will."

[15]Civil Code section 1386.2 provides: "A general residuary clause in a will, or a will making general disposition of all of the testator's property, does not exercise a power of appointment held by the testator unless specific reference is made to the power or there is some other indication of intention to exercise the power."

mination of such incompetency issued by such Court shall have been served upon and delivered to the Trustee." (Italics added.)

Respondent argues the language in article III: "This trust may be amended, altered or revoked *at any time* by the Trustor," (italics added) provides the alternative time permitted under article V. This interpretation is wrong. "During his or her lifetime" is more specific than "at any time." The specific provision must control. Otherwise, it would lead to the anomaly of having a deceased person perform an act, to wit, filing a document with the trustee.

Here, the trial court's judgment improperly ordered, per the February 27, 1984, will, that the corpus of the inter vivos trust be distributed to the five beneficiaries named in the third paragraph of the will (along with one trust remainderman beneficiary who did not join any of the contests). However, rather than amend the inter vivos trust as Mrs. Lindstrom conceivably believed it would, the third paragraph of the February 27, 1984, will created a testamentary trust for the division of her probate assets.[16]

If the stability of financial transactions is to have any meaning, it must rest on objective considerations. Attorneys drawing up trust documents typically rely on such considerations:[17] ██ The existence of a right of revocation in a trust instrument does not in any way affect the legal title to the property, which passes to the trustee and remains vested for the purposes of the trust. If the right of revocation is never exercised during the lifetime of the trustor, the validity of the trust remains unaffected. Relying on these well-settled principles of trust law and the Restatement Second of Trusts section 330, comment j, we hold that a will that was not delivered to the trustee during the lifetime of the trustor cannot revoke or modify a trust.

### III-V*

. . . . . . . . . . . . . . . . . .

### Disposition

We affirm the trial court's judgment insofar as it admits the February 27,

---

[16]Her probate assets consisted of her property in California other than the corpus of the inter vivos trust. The will specifically did not include Mrs. Lindstrom's real property and mining interests in Alaska, which passed intestate to her heirs-at-law.

[17]For forms relating to reservation of power of revocation, see Drafting California Revocable Living Trusts (Cont.Ed.Bar 1984) sections 4.9 and 4.11, pages 117, 119; California Forms 38:21 article I-B, 38:22 article VII-C, 38:23 article I-B, 38:144; 17 AmJur. Legal Forms Second, sections 251:103 et seq., 251:793 et seq.

*See footnote 1, *ante,* page 375.

1984, will to probate. The assets of the probate estate shall be distributed in accordance with the proper interpretation of the will, i.e., Mrs. Lindstrom's California property which is not part of the corpus of the February 23, 1982, inter vivos trust will be distributed to the named beneficiaries of the testamentary trust, with San Diego Trust & Savings Bank as trustee.

To the extent that parties have entered into a stipulation based on the trial court's findings, a part of which we have reversed, the trial court in its discretion remains free to relieve the parties of that part of the stipulation granting a 5 percent share of the testamentary estate to Lucille Hoffman and to enter an appropriate order consistent with this opinion.

We reverse paragraphs four and five of the trial court's judgment and remand the matter for entry of an appropriate order distributing the assets of the February 23, 1982, inter vivos trust in accordance with its stated terms.

The judgment is otherwise affirmed.

The parties are to bear their own costs.

Kremer, P. J., and Wiener, J., concurred.

A petition for a rehearing was denied May 12, 1987, and the petition of respondent Hall for review by the Supreme Court was denied July 15, 1987.