Filed 2/28/14  Estate of Bridges CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| Estate of DANIEL BRIDGES, Deceased. | |
| RENEE HANSEN, Petitioner and Respondent, v. KIM BRUMLEVE, Objector and Appellant. | A137168 (Contra Costa County Super. Ct. No. P09-00615) |

In this probate matter, we consider an appeal by a former executrix of the decedent's estate from a judgment imposing a surcharge in excess of $160,000, plus interest, attorney fees, and costs.  Kim Brumleve seeks reversal of an order sanctioning her for various instances of misuse, conversion, and waste of estate assets.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Wills*

On January 28, 1997, Daniel Bridges, acting through attorney John Busby, prepared and signed a will (first will), naming Brumleve as a beneficiary and as executrix.  Eight months later, on September 24, 1997, Bridges, again with Busby's assistance, prepared and signed a second will (second will), revoking all prior wills and codicils and naming Renee Hansen as a beneficiary and executrix.

1

## B.     *Initial Probate Proceedings*

On April 10, 2009, Bridges died.  Upon learning of Bridges's death, attorney Busby checked his files and mistakenly retrieved the first will.  Thus, instead of submitting the second (and valid) will for probate, Busby submitted the prior, revoked (first) will.  Consequently, Brumleve, as the named executor, received letters testamentary on July 9, 2009, along with the order for probate.

For the next year and a half, Brumleve made numerous disbursements of estate assets without court approval.  During this period, Brumleve failed to file either an Inventory and Appraisal (Prob. Code,[1] § 8800), or provide a Status Report (§  12200).[2]

In late May 2011, Hansen discovered the September 1997 will, naming her as a beneficiary and as executrix of Bridges' estate.  Less than a month after discovering Bridges's September 1997 will, Hansen filed a petition for probate on June 15, 2011.  A hearing on the petition was set for July 21, 2011.  Service by publication was effected on three separate occasions.

A day before the scheduled hearing, Brumleve filed an objection to Hansen's petition.[3]  At the July 21 hearing, Brumleve's attorney asserted that his client was unaware of the existence of a second will.  Counsel requested that the new will be reviewed by a document examiner.  The parties agreed to a forensic examination of both wills and the matter was continued to September 20, 2011.

At the September 20, 2011 hearing, Brumleve appeared in pro per in her capacity as executrix, but had counsel representing her with respect to her interest as a beneficiary.  Brumleve's counsel explained that he had spoken to the forensic document examiner, but Brumleve, herself, had not.  Brumleve's counsel did not dispute the second will's validity, explaining that based on the forensic document examiner's opinion, "there is no

---

[1]     All further statutory references are to the Probate Code unless otherwise noted.

[2]     Also, during the time frame, Busby withdrew from representing Brumleve.

[3]     Based on the limited record on appeal, it does not appear that Brumleve served her objection on Hansen or her attorney.

evidence that the document is anything other than authentic."[4] Counsel added that although only he had spoken to the forensic document examiner, "[h]e's not going to tell [Brumleve] something different obviously . . . ." At the hearing, the court also noted that although Brumleve had recently filed a Status Report, she had not served it on opposing counsel. The court ordered Brumleve to put a copy of the Status Report in the mail to counsel that day. The court further admonished Brumleve that the Status Report did not contain the requisite financial information. The court observed that Brumleve had "been a personal representative of this estate for over two years," and, as such, she "should have been able to determine the nature and extent of the assets by now and be prepared to wrap up the estate." The court ordered Brumleve to file and serve a proper Status Report by October 20, 2011 and continued the matter to October 27, 2011.

C. **Petition for Suspension of Powers and Removal**

On September 29, 2011, Hansen filed and served a petition for suspension of powers and removal of Brumleve as executrix, alleging numerous grounds, including that: (1) Brumleve had wrongfully neglected the estate (§ 8502), by failing to account for the estate's substantial income and by failing to provide any information about the status of the estate's assets, debts and income, despite numerous requests to do so; (2) Brumleve filed an incomplete Inventory and Appraisement, which was submitted nearly a year after she was appointed; Brumleve had yet to file a corrected Inventory and Appraisement; (3) numerous creditor claims were pending and not being addressed; (4) Brumleve had yet to file an adequate Status Report as ordered by the court on July 21, 2011 and also failed to comply with the court's September 20, 2011 order to immediately provide Hansen with a copy of the existing, albeit defective, Status Report filed with the court; and (5) the admission to probate of the later, valid will required Brumleve's removal from office (§ 8504, subd. (b)). The matter was set for hearing on October 27, 2011 hearing.

---

[4] Dissatisfied with the opinion that the second will was valid, Brumleve hired another forensic document examiner who concluded that Bridges did not sign the second will.

3

On October 24, 2011, Brumleve filed an Amended Inventory and Status report, along with her response to Hansen's petition seeking the suspension of Brumleve's power and removal as executrix.[5] Hansen filed an objection to the Amended Inventory and Status Report.

At the October 27, 2011 hearing, Brumleve would not agree to step down and the matter was set for trial, which was to be held on December 27, 2011.

**D.    *Pretrial Proceedings Regarding Removal Petition and Second Probate Petition***

Prior to trial, Hansen filed and served an issue conference statement on December 2, 2011, detailing Brumleve's mismanagement of the estate and establishing that the second will was the only valid will. In support, Hansen submitted numerous exhibits, including declarations from attorney Busby and his associate, Charles B. Sapper, regarding the authentication and validity of the second will. On December 6, 2011, Hansen submitted an addendum to the issue conference statement, describing Brumleve's failure to meet and confer and refusal to comply with the discovery demands. Hansen explained that Brumleve had failed to account for "several hundred thousands of dollars," as well as her receipt of estate income in excess of $8,500 per month for two and a-half years. Hansen requested that Brumleve be discharged immediately as executrix.

Brumleve appeared at the December 12, 2011 pretrial conference and submitted a late issue conference statement, which the court accepted over Hansen's objections. All matters were confirmed for trial on December 27, 2011.

**E.    *Trial Regarding Removal Petition and Probate of Second Will***

Attorney Busby testified that it was his practice to file the wills he had prepared in a will drawer. Busby prepared two wills for Bridges one in January 1997 and one in September 1997. However, for some unknown reason the first will was never destroyed,

---

[5]    In respondent's brief on appeal, Hansen asserts that Brumleve, in the Amended Inventory and Status Report, acknowledged spending in excess of $81,500 of estate funds without court approval. The Amended Inventory and Status report is not, however, included in the record on appeal.

4

but was kept in Busby's will drawer. The second will never made it into the will drawer. Consequently, when Busby learned of Bridge's death, he pulled the first will from the will drawer and submitted it for probate. When Hansen's attorney sent him a copy of the second will, Busby searched his office and found the original, which had been misfiled with another case.

Attorney Sapper testified that he witnessed Bridges sign the second will, which included a paragraph revoking all prior wills and codicils. Both Sapper and Bridges read the second will before each signed it.

Brumleve's expert, forensic document examiner Beth Chrisman, testified that, based on known samples, Bridges "did not write the Will in question." Review of the original documents did not alter her opinion.

## F. Trial Court Ruling

On December 30, 2011, the trial court granted Hansen's petition for probate of the second will, revoked the letters testamentary issued to Brumleve with respect to the first will, suspended her powers and removed her as executrix. The court ordered Brumleve to deliver estate assets to Hansen, and to file a complete Inventory and Accounting by January 31, 2012, including receipts and documentation to support all expenditures of estate funds. The compliance hearing was set for February 9, 2012.

## G. Sanctions

Following Brumleve's failure to transfer estate assets as ordered by the court, Hansen filed a request for sanctions on February 3, 2012. In support of this request, Hansen submitted a declaration from estate debtor Wahid Tadros. In his declaration, Tadros averred that he had been paying $8,500 per month to Brumleve since 2009.

### 1. February 9, 2012 Compliance Hearing

Brumleve appeared by court call services and was again ordered to produce estate assets and records to Hansen by February 15, 2012. She was not sanctioned at this time, but was advised that if she did not comply she would be sanctioned at the next compliance hearing, which was set for February 21, 2012. The order from the hearing was filed and served on Brumleve on February 9, 2012.

5

*2.    February 21, 2012 Compliance Hearing*

Brumleve failed to appear at the compliance hearing. Hansen's attorney reported that approximately $270,000 was missing from the estate. The court ordered Brumleve to submit the remaining documents by March 1, 2012 and warned that failure to comply would result in sanctions up to $1,500. It was further ordered that, in the future, Brumleve must appear in person and not use court call services.

*3.    March 1, 2012 Compliance Hearing*

Brumleve appeared and stated that she had filed and faxed the Inventory and Appraisal. Hansen's attorney reported that he had not received anything since the last hearing. The court affirmed its February 21, 2012 order and sanctioned Brumleve $1,500. The court further admonished Brumleve that if she did not comply by March 19, 2012, which was the next scheduled compliance hearing, the court would sanction her an additional $50 per day until she complied.

*4.    March 19, 2012 Compliance Hearing*

Brumleve failed to appear at the hearing and had not complied with the prior orders. The court affirmed its March 1, 2012 order and imposed additional sanctions of $50 per day starting March 20, 2012, until an accounting was filed in court and all estate records were delivered to Hansen. A further compliance hearing was set for April 24, 2012.

*5.    April 24, 2012 Compliance Hearing*

Brumleve appeared at the hearing. Hansen's attorney reported that he had received a large envelope containing receipts that were not organized or verified under penalty of perjury. The court affirmed its continuing sanctions of $50 per day until Brumleve complied with the prior orders. The matter was continued to June 15, 2012.

Prior to the June 15, 2012 hearing, Hansen discovered that Brumleve had transferred certain estate real property to her own name. Brumleve failed to comply with Hansen's requests to transfer the real property back to the estate.

6

*6.     June 15, 2012 Compliance Hearing*

Brumleve failed to appear at the hearing due to an apparent flat tire.  The court, finding no good cause to continue the case, proceeded to rule on the matter.  In response to Hansen's declaration, seeking ex parte orders to restore estate assets, the court directed Hansen's counsel to file a new petition regarding the recovery of estate property and request for surcharge.  The court further directed Hansen's counsel to prepare and submit an order to freeze estate assets and to restrain Brumleve from transferring or selling certain estate real property.  Further hearing was set for August 28, 2012.

*7.     June 18, 2012 New Petition filed by Hansen*

As directed by the court, Hansen filed a new petition, requiring Brumleve to: 1) repay estate assets, 2) transfer property, 3) be surcharged in the amount of $200,000 for misappropriated assets, and 4) pay fees and costs.  Hearing was set for August 28, 2012.  Hansen served Brumleve with the new petition and filed the proof of service with the court.

*8.     August 28, 2012 Compliance Hearing*

Brumleve appeared at the hearing, but claimed to only have knowledge about the ex parte application.  According to Brumleve, she did not see the petition regarding her repayment and transfer of estate assets and the request for surcharge.  Without challenging the propriety of service, the court ordered Hansen's counsel to provide another copy of the June 18th petition to Brumleve and the matter was continued to October 2, 2012.  The court ordered Brumleve to file and serve any objections by September 26, 2012.

*9.     October 2, 2012 Compliance Hearing*

Brumleve failed to appear at the hearing and the matter was continued to November 13, 2012.  Hansen's attorney reported that Brumleve still had not complied with the court orders.  The court stated it would not make any orders at that time, as Brumleve was not present.

7

10. *November 13, 2012 Compliance Hearing and Ruling*

Brumleve again failed to appear at the scheduled hearing. Hansen's counsel stated his client and the decedent's brother presented Brumleve with a deed to transfer the property back to the estate but Brumleve refused to sign it. Hansen's counsel requested the clerk of the court to sign the deed in lieu of Brumleve. After considering all the evidence and applicable law, the court appointed the clerk of the court to execute deeds of conveyance on Brumleve's behalf regarding, but not limited to, multiple parcels of real property in Lake County. The court surcharged Brumleve for misappropriated estate assets in the amount of $159,185.91. The court also sanctioned Brumleve for the conversion of the estate's 2002 Toyota Camry and ordered her to pay an additional $3,000 to the estate.

## II. DISCUSSION

### A. *Preliminary Matters*

A general principle of appellate practice is that an " 'order of the lower court is presumed correct.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, italics omitted.) This general principle means that (1) " '[a]ll intendments and presumptions are indulged to support [the order] on matters as to which the record is silent,' " and (2) the appellant must affirmatively show error occurred. (*Ibid.*) To affirmatively show that error occurred, an "appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] . . . [C]onclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) In other words, it is simply not sufficient for an "appellant to point to the error and rest there." (*Santina v. General Petroleum Corp.* (1940) 41 Cal.App.2d 74, 77.) It is Brumleve's burden to convince us that the lower court's decision was fraught with reversible error, by reciting the law and calling relevant portions of the record to our attention. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 869, superseded by statute on other grounds as stated in *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 478.) This she has not done.

The proper way to cite authority and facts in the record is addressed in rule 8.204(a)(1) of the California Rules of Court.[6]  That rule states that each appellate brief must "support each point by argument and, if possible, by citation of authority; and [¶] Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  (Rule 8.204(a)(1)(B), (C).)  An appellate brief must also provide "a summary of the significant facts *limited to matters in the record*."  (Rule 8.204(a)(2)(C), italics added.)

Brumleve's pro per status does not exempt her from the application of the law. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985; *Stokes v. Henson* (1990) 217 Cal.App.3d 187, 198.)  Brumleve shows no understanding of her burden on appeal, as her opening brief is "in dramatic noncompliance with appellate procedures."  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)  Specifically, Brumleve's opening brief does not adequately contain appropriate citations to the record (Rule 8.204(a)(1)(C)); it does not "[p]rovide a summary of the significant facts limited to matters in the record" (Rule 8.204(a)(2)(C)); and it does not "support each point by argument and, if possible, by citation of authority" (Rule 8.204(a)(1)(B)).

Brumleve sets forth numerous purported errors, but fails to provide a cogent legal analysis citing and applying the applicable law to the facts of the instant case.  (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685 ["appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority"]; *People ex rel. Dept. of Alcoholic Beverage Control v. Miller Brewing Co.* (2002) 104 Cal.App.4th 1189, 1200 ["appellant must present a factual analysis and legal authority on each point made or the argument may be deemed waived"].)  "We are not bound to develop appellant['s] arguments for [her].  [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived.  [Citations.]"  (*In re Marriage of Falcone & Fyke* (2008) 164

---

[6]     All further references to rules are to the California Rules of Court.

9

Cal.App.4th 814, 830; see also rule 8.204(a)(1)(B).) Even overlooking this waiver, we conclude that Brumleve's claims fail on the merits.

**B.      Procedural Issues**

*1.      Statute of Limitations*

Citing former Code of Civil Procedure sections 1327 and 1333, Brumleve appears to suggest that Hansen's probate petition was an untimely will contest. Not so. Pursuant to the applicable law—i.e., Probate Code section 8270—a will contest must be filed within 120 days after a will is probated. (*Id.* at subd. (a).) However, for nearly a century, the rule in California has been that the presentation of a later will does not constitute a contest to a will of an earlier date that has been previously offered for probate. (*In re Estate of Moore* (1919) 180 Cal. 570, 573.) In *In re Estate of Moore, supra,* our supreme court examined whether the probate of a later will was time barred under the contest statutes. (*Id.* at pp. 571-573.) It held that an offer for probate of a second, later will was not a contest, and that such a decision was in accord with the general rule that, "courts of probate have inherent power to set aside their own orders admitting wills to probate upon the discovery of later and inconsistent wills." (*Id.* at p. 575.) Consistent with this longstanding practice, section 8226 provides that a will "may be admitted to probate notwithstanding prior admission to probate of another will" provided that the proponent of the subsequent will petitions for "probate of the will only within the later of either of the following time periods: [¶] (1) One hundred twenty days after issuance of the order admitting the first will to probate . . . . (2) Sixty days after the proponent of the [subsequent] will first obtains knowledge of [that] will." (§ 8226, subds. (b) & (c).)

Here, it is undisputed that Hansen did not discover the second will until late May 2011. Hansen's probate petition, filed on June 15, 2011, was unquestionably timely. Thus, Brumleve's statute of limitations claim necessarily fails.

*2.      Due Process*

Brumleve asserts that "continual lack of service," together with "opposing counsel's misrepresentation of the issues" resulted in the matter being adjudicated ex parte without an evidentiary hearing. The record belies Brumleve's claim of lack of

10

service.  We will not give any credence to Brumleve's unsupported claim that opposing counsel lied about serving her with the requisite papers.  Moreover, the instant case was not adjudicated on an ex parte basis.  Rather, as detailed above, the court held numerous hearings with respect to the contested issues.  Accordingly, this issue is without merit.

## C.      *Real Property Claims*

Brumleve challenges the probate court's authority to take real property that had already been distributed according to the first will.  "We review questions as to the jurisdiction and authority of the probate court de novo.  [Citation.]"  (*In re Estate of Kraus* (2010) 184 Cal.App.4th 103, 112.)

"When jurisdiction is . . . conferred on a [c]ourt . . ., all the means necessary to carry it into effect are also given; and . . . any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."  (Code Civ. Proc., § 187.)  As relevant here, "pursuant to section 856, '[I]f the court is satisfied that a conveyance, transfer, or other order should be made, the court shall make an order authorizing and directing . . . the person having title to or possession of the property, to execute a conveyance or transfer to the person entitled thereto, *or granting other appropriate relief'* (Italics added.)  Section 856 clearly and unambiguously grants the probate court the power not only to order a conveyance or transfer to the person entitled to the property in question, but also to *grant other appropriate relief.*  Even apart from the statutory authority, the probate court is a court of general jurisdiction (§ 800 [citation]), with broad equitable powers.  (See, e.g., *Estate of Stanley* (1949) 34 Cal.2d 311, 319; *Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1311-1312; *Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 624; *Alexandrou v. Alexander* (1974) 37 Cal.App.3d 306, 320-321; *Rivero v. Thomas* (1948) 86 Cal.App.2d 225, 238; [citation].)  The probate court has jurisdiction to determine whether property is part of the decedent's estate or living trust.  (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 951-952; see *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427.)  As the Court of Appeal discussed in *Estate of Heggstad, supra,* 16 Cal.App.4th at page 952: 'The probate court has general subject matter jurisdiction over the decedent's property and as such, it is empowered to resolve

11

competing claims over the title to and distribution of the decedent's property. (§ 7050, subd. (b); see, e.g., *Estate of Baglione* (1966) 65 Cal.2d 192, 196-197 . . . .)' [Citation.] The probate court may apply general equitable principles in fashioning remedies and granting relief. (*Estate of Bissinger* (1964) 60 Cal.2d 756, 764-765; [citation].) Our Supreme Court has held, 'In the exercise of its legal and equitable powers [citations], a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim.' (*Estate of Baglione, supra,* 65 Cal.2d at p. 197.) Our Supreme Court explained: 'The ultimate aim and purpose of administrative proceedings, including any special proceeding or contest to determine heirship, is to ascertain the persons entitled to share in the estate of the decedent and to decree distribution accordingly. It will not be questioned that justice and sound policy require that the estates of decedents be distributed to persons rightfully entitled thereto and that every concern and endeavor of a probate court should be to the accomplishment of that purpose.' (*Edlund v. Superior Court* (1930) 209 Cal. 690, 695; accord, *Estate of Broad* (1942) 20 Cal.2d 612, 622; see *O'Day v. Superior Court* (1941) 18 Cal.2d 540, 543 ['the object of the probate and administration proceedings is to secure distribution to the persons entitled to share in the estate'] . . . ." (*In re Estate of Kraus, supra,* 184 Cal.App.4th at pp. 113-114.)

Brumleve's challenge to the probate court's disposition of estate real property is two-fold, claiming first that the court erred under section 8226 by taking property that had already been distributed under the prior will, and next that the court lacked jurisdiction to empower the clerk of the court to sign the property deeds.

Pursuant to subdivision (b) of section 8226, "a will may be admitted to probate notwithstanding prior admission to probate of another will or prior distribution of property in the proceeding. The [subsequent] will may not affect property previously distributed, but the court may determine how any provision of the [subsequent] will affects property not yet distributed and how any provision of the will affects provisions of another will." It is arguable that section 8226, subdivision (b), according to its literal meaning, provides absolute immunity to a personal representative who distributes

12

property under a prior will.  "Where the language of a statute is unambiguous, reviewing courts need not engage in statutory construction or otherwise search for indicia of legislative intent.  [Citation.]  Nevertheless, although ambiguity ordinarily is a condition precedent to statutory interpretation, our rules of statutory construction also teach us that courts should look to the substance rather than the letter of the statute if absurd or unjust results follow from a literal interpretation.  [Citation.]"  (*Mautner v. Peralta* (1989) 215 Cal.App.3d 796, 804.)

"Another rule of statutory construction teaches us that statutes and codes blend into each other, and should be regarded as constituting but a single statute.  [Citation.]  And in ascertaining legislative intent, we are further aware that our mandate is to construe together statutes which are 'in pari materia' so that the whole body of law may be harmonized and retain its effectiveness.  [Citation.] ' " 'Statutes in pari materia are those which relate to the same person or thing, or to the same class of persons or things.  In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law.' " ' [Citation.] "  (*Mautner v. Peralta, supra,* 215 Cal.App.3d at p. 804.)

As relevant here, section 8226 is "in pari materia" with section 8525 as both statutes relate to prior dispositions of estate real property.  Pursuant to section 8525, subdivision (a), "[t]he acts of the personal representative before a vacancy occurs *are valid to the same extent* as if no vacancy had later occurred."  (Italics added.)  The purpose of section 8525 is self-evident: it provides for the conclusiveness of *proper acts* of personal representatives notwithstanding the subsequent revocation of his or her letters.  When sections 8226 and 8525 are read together the conclusion is inescapable— *prior, proper acts* remain valid notwithstanding the submission of a subsequent will and/or subsequent removal of a personal representative.

In the instant case, the record is replete with instances of Brumleve's improper acts in her capacity as executor.  Specifically, Brumleve transferred estate property and took estate money without the court's permission; she also failed to account for estate

13

property and to comply with numerous court orders. Under these circumstances, the probate court did not err in fashioning the remedy that it did.

## D. *Propriety of Sanctions*

In addition to the equitable powers of the probate court, all courts have powers to enforce orders. Code of Civil Procedure section 128 gives every court the authority "[t]o compel obedience to its judgments[ and] orders . . . ." (Code of Civ. Proc., § 128, subd. (a)(4).) A judge has the power "[t]o compel obedience to his [or her] lawful orders as provided in [the Code of Civil Procedure]." (Code Civ. Proc., § 177, subd. (2).) Finally, "[w]hen jurisdiction is . . . conferred on a [c]ourt . . ., all the means necessary to carry it into effect are also given; and . . . any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." (Code Civ. Proc., § 187.)

Despite her failure to comply with numerous court orders, Brumleve challenges the propriety of the sanctions against her, claiming that the sanctions were barred by res judicata. She further asserts that even if the sanctions were not so barred, she did not owe a fiduciary duty to Hansen.

### 1. *Res Judicata*

Relying on the December 30, 2011 order after trial, Brumleve claims that the "the issu[es] of sanctions and . . . taking [her] property are barred by res judicata . . . ." We disagree. " ' "Res judicata" describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." ' [Citation.]" (*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 683.) Brumleve has not demonstrated the December 30, 2011 order after trial, in which the court crossed out the requirement that she return the estate car "in good and workmanlike condition," constituted a "final judgment on the merits." (*Id.* at p. 683.) Moreover, the December 30, 2011 order specifically required that Brumleve "deliver immediately" to Hansen "all assets of the Estate including all documents necessary . . . to transfer such assets" to Hansen. Brumleve's repeated failure to comply

14

with this order, among other things, resulted in the imposition of the challenged sanctions.

### 2. *Fiduciary Duty*

Brumleve suggests that she could not be liable for sanctions regarding a breach of fiduciary duty vis-à-vis Hansen because Hansen, who was neither a beneficiary nor a creditor under the first will, had "no independent standing to complain." This argument is without merit. Irrespective of whether Hansen was a named or intended beneficiary of the first will, Brumleve was sanctioned for her repeated failure to comply with court orders acknowledging the validity of the *second will*, which required that she "deliver immediately" to Hansen "all assets of the Estate including all documents necessary . . . to transfer such assets" to Hansen, who was the true executor of the estate. As discussed, Brumleve's conduct required numerous hearings, which culminated in her being surcharged in excess of $160,000. On this record, the court acted well within its jurisdiction in imposing the sanctions that it did.

## III. DISPOSTION

The judgment is affirmed. Hansen is entitled to costs on appeal.

_____
REARDON, P. J.

We concur:

_____
RIVERA, J.

_____
HUMES, J.

15